Gary Michael SELPH *v.* STATE of Arkansas

CR 78-53                              570 S.W. 2d 256

Opinion delivered September 11, 1978
(Division II)

*Don Langston* and *John W. Settle,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Deputy Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Gary Michael Selph received a suspended sentence on a charge of burglary and theft of property in the Circuit Court of Sebastian County on April 7, 1977. On December 13, 1977, a petition to revoke the suspension was filed. It was based on an allegation that Selph had violated the terms of the suspension by committing burglary on October 8, 1977. After a hearing on December 14, 1977, the suspension was revoked. Two days later, appellant filed a motion to set aside the order of revocation, alleging that the state had introduced evidence of incriminating oral statements, allegedly made by him, without having been required to prove the voluntariness of the statements and that, without this testimony, the evidence was insufficient to justify the revocation. He requested a hearing on the motion, but no hearing was held and appellant elected to give notice of appeal on January 12, 1978, and the appeal was lodged here on April 10, 1978, apparently without appellant's ever having been heard on his motion.

Appellant first contends that the court erred in revoking the suspension of his earlier sentence because the state failed to prove a violation of the terms of the suspension by a preponderance of the evidence. He concedes that he has the burden of showing that the trial court's finding was clearly against the preponderance of the evidence. See *Pearson v. State,* 262 Ark. 513, 558 S.W. 2d 149.

Appellant first argues that the evidence, including his incriminating statements, is insufficient to show a burglary committed by him. We disagree when we view the evidence in the light most favorable to the state, as we must.

On October 8, 1977, at 10:41 p.m., Officer Cooper answered a call reporting a burglary at Brandee's Fast Food, a drive-in restaurant (which was closed for the night) located at 12th and Midland in Ft. Smith. There are paved parking lots in front of, on each side of, and immediately behind the restaurant. Further to its rear, there is a parking lot for trailer

trucks connected with an ice plant. Cooper found a picture window facing 12th Street broken so that a medium-sized man could walk right through the window. Cooper entered the building. Neither he, nor anyone else who testified, found any evidence that anyone had physically entered the building or taken anything from it. When Cooper left the building he was approached by a woman. While engaged in conversation with her, he noticed a man (positively identified by him as Selph) squatting near the wheels of a trailer truck on the ice plant parking lot. When Cooper approached the trailer, which was 25 to 50 feet away, Selph started across the back of the cab of the truck, and, when Cooper came closer, Selph "hit the ground," looked at the officer and ran. Selph, in his flight, "flew" over a chain link fence eight feet high. When Selph arose from the ground, he started toward Cooper and it appeared to Cooper that he had something in his hand. Cooper commanded that Selph "halt" and, fearing that Selph had a weapon, drew his pistol and fired one shot into the ground and two others in the direction of Selph as he ran into an adjoining field. Later Selph was taken to a hospital by Officer Lowrance for treatment of a wound in the area of his buttocks.

Lowrance described Selph as being exhausted, weak, run-down and out of breath when he took Selph from the custody of Captain Bettis, who had called for assistance after he had taken Selph into custody at a place separated from the restaurant only by a field covered with tall vines and grass. After having been advised of his right to counsel and his right to remain silent, and without having been asked any questions, Selph admitted having been in the area around the restaurant after he had heard a report of a burglary and having been chased and shot by an officer, even though he vacillated between differing versions of the shooting.

Selph's shoes matched prints found on the ground in the ice plant parking lot and on the gas tanks of a truck parked there. The prints were about 15 yards from the building. The area immediately behind the restaurant building for a distance of approximately ten yards was covered with a material that would not show footprints.

Officer Caldwell was assigned the duty of guarding

Selph at the hospital. On October 9, at approximately 9:55 p.m., Selph and Caldwell were watching television, when Selph, without any interrogation by Caldwell, began relating events of the preceding evening. Selph said that the officers had suspected that his wife had been with him at the time of the alleged "break-in" and then began talking of the girl at the scene, saying, "They thought that girl was with me when I broke in that place."

Selph elected to testify. He admitted that he had been hiding behind the truck for about ten minutes before he was found by Officer Cooper. He also admitted that the officer yelled at him when he started over the fence, and that he "took off." He said that in talking to Officer Caldwell at the hospital, he was only referring to a clipping from a Ft. Smith newspaper which included a statement that a "long blond-haired girl" had been with him. He said the clipping had been brought to him by his wife. Yet, on cross-examination, he said that he did not remember what had happened in the hospital room and did not even remember being in there. Selph testified that he had walked in front of the restaurant and said that the police had been to the scene, made an investigation, and left before he arrived, but had returned after he had hid in the parking lot. Selph had, on one occasion, said that he knew of the "break-in" at Brandee's because his wife had told him of it. She denied having had such a conversation with him. Selph had given differing explanations of his having been shot, including two versions other than the admission that he had been shot by officers while near the restaurant.

Appellant is correct in his argument that the evidence did not show an entry into the building, which is an essential element of the crime of burglary as defined by Ark. Stat. Ann. § 41-2002 (Repl. 1977). But it was sufficient to show the lesser included offense of breaking or entering defined by § 41-2003 (Repl. 1977), which itself constituted a violation of the terms of the suspension of his sentence. Appellant's statement to Caldwell, if that officer's testimony be given full credence, as it obviously was, is sufficient to connect him with the crime of breaking. This statement, along with Selph's presence at the scene, his attempt to hide, his flight upon approach of Officer Cooper and the circumstances of his ap-

prehension, constituted sufficient evidence of the corpus delecti. *Mouser* v. *State*, 215 Ark. 131, 219 S.W. 2d 611.

Appellant also argues that, even assuming that he voluntarily made the statement attributed to him by Caldwell, the evidence is insufficient, unless there is other proof that a crime was committed, as required by Ark. Stat. Ann. § 43-2115 (Repl. 1977). This statute, by its own language, applies only where a conviction of the crime charged is sought on a trial on that charge. Its applicability is as restricted by its language as is Ark. Stat. Ann. § 43-2116 (Repl. 1977), regarding the requirement of corroboration of the testimony of an accomplice for conviction of a felony. We have heretofore held that the latter statute is inapplicable to a proceeding for revocation of a suspension of sentence. *Ellerson* v. *State*, 261 Ark. 525, 549 S.W. 2d 495. For the same reason, Ark. Stat. Ann. § 43-2115 has no application to a proceeding for revocation and appellant's virtual confession would afford sufficient basis for the judgment revoking his suspension. See also, *Bush* v. *State*, 506 S.W. 2d 603 (Tex. Cr. App., 1974); *Arizona* v. *Lay*, 26 Ariz. App. 64, 546 P. 2d 41 (1976).

Appellant's other point for reversal is a contention that the trial court erred in failing to grant a hearing on the voluntariness of his statements to Officer Caldwell. This question was not raised during the course of the proceeding. It was only raised by the post-trial motion. No objection was registered to the testimony to which objection is now made. Officer Lowrance had testified that, at the time Selph was taken to the hospital, Captain Bettis, in Lowrance's presence, had advised Selph of his right to counsel and his right to remain silent. Captain Bettis, who had known Selph since Selph was a child, testified that he had not only advised Selph of these rights, but had advised him that anything he said could be used against him and that, if he could not afford to hire an attorney, one would be appointed. The testimony that there was no interrogation of Selph by the officers, except when Caldwell asked him to repeat the statement he had made, was uncontradicted. Caldwell testified that he had advised Selph of his rights under *Miranda* after Selph had made the statement and had declined to discuss the matter further with Selph, who still persisted in talking about the events of the previous night, but made no further incriminating

statements. Selph denied having told the police officers anything when he was arrested. He did not say that he had been coerced into making any statement, and could only explain Caldwell's testimony by saying that Caldwell misunderstood him. The contradiction in his testimony regarding this conversation and his recollection is significant.

Appellant's time for filing notice of appeal did not expire until 30 days after the disposition of his motion. Ark. Stat. Ann. § 43-2704 (Repl. 1977). Obviously, he elected to appeal rather than press for a hearing on his motion. But in any event, we cannot say that he was entitled to a hearing on the motion. The record does not disclose any request for discovery under Rule 17, Rules of Criminal Procedure, and the prosecuting attorney was under no duty to disclose the substance of Selph's statement to defense counsel in the absence of a timely request. We do not see how appellant can claim surprise as an excuse for failure to object to the statement on the ground asserted in his post-trial motion when the officer, before relating the statement, testified that Selph had begun relating facts that had occurred on the night of October 8. Before stating what had been said by Selph, Caldwell was interrupted by a question by the trial judge and was asked another by the deputy prosecuting attorney. No objection was made, no request was made to strike the testimony and no request was then made for a Denno hearing. Cross-examination by appellant's attorney was not directed toward the establishment of a lack of voluntariness on the part of Selph. Rather, counsel attempted to emphasize such things as Caldwell's failure to write down what Selph had said for about an hour, the fact that, within a few moments, Selph had made two inconsistent statements to Caldwell and Caldwell's failure to warn Selph of his rights until after he had made both statements and the possibility that Caldwell was confused about the statements actually made. There was no intimation in Selph's testimony, given later, that his statement was not voluntary unless his answer that he did not remember being in the hospital or what had happened there and Caldwell's statement that medication for pain had been administered be taken as such. He made no allegation in his motion to set aside the trial court's order that the statement was involuntary. Furthermore, the motion contains no statement that the movant believed the action to be meritorious or

that it was not offered for the purpose of delay, as required by statute.

The decision in *Jackson* v. *Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), does not require a hearing as to the voluntariness of a confession when the defendant does not object to its admission. *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). *Jackson* merely holds that a defendant has a "right at some stage in the proceedings to *object* to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness." *Wainwright* v. *Sykes,* supra. "[T]he Constitution does not require a voluntariness hearing absent some *contemporaneous* challenge to the use of the confession." *Wainwright* v. *Sykes,* supra. [Emphasis ours.] As in *Wainwright,* as this proceeding unfolded, the trial judge is not to be faulted for failing to question the voluntariness of the statement himself, particularly when it was obvious here that trial counsel was pursuing a different strategy.

Our statute on the subject requires an in camera hearing concerning the admissibility and voluntariness of a confession only when the issue is raised by the defendant and the determination is to be made before admitting the confession into evidence. Ark. Stat. Ann. § 43-2105 (Repl. 1977). Cf. *Hill* v. *State,* 250 Ark. 812, 467 S.W. 2d 179. When the question of voluntariness of a confession was raised in *Bivens* v. *State,* 242 Ark. 362, 413 S.W. 2d 653, we applied the general rule that an alleged error in a felony case of a degree less than capital cannot be considered by this court in the absence of an objection calling for a ruling by the trial court. We also applied the rule that an objection first made in a motion for new trial was not sufficient. We there pointed out that we had held that a party should not be permitted to speculate upon the testimony of witnesses and then, at the end of the trial, demand that incompetent testimony be excluded. Similarly, it was stated in *Wainwright* that failure to give regard to a contemporaneous objection rule might encourage "sandbagging" on the part of defense lawyers by taking a chance on a favorable result and subsequently raising the constitutional claim if the initial gamble did not pay off. We do not mean to intimate that trial counsel in this case was con-

sciously guilty of such a tactic. It is sufficient to state that no valid reason for failure to make a contemporaneous objection or motion to strike has been demonstrated, even in the post-trial motion.

The judgment is affirmed.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.