Obbie WILLIS *v.* STATE of Arkansas

CA CR 01-59                                     62 S.W.3d 3

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered November 28, 2001
[Petition for rehearing denied. Supplemental concurring and
dissenting opinions on denial of rehearing delivered March 13,
2002.]

*McCullough Law Firm*, by: *R.A. McCullough*, for appellants.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

STEELE HAYS, Special Judge. In 1997 appellant was convicted of third-degree battery on a plea of guilty. He was placed on probation for a term of three years.

New charges were filed against appellant in 1999, consisting of first-degree domestic battery and revocation of probation under his previous sentence.

The state and the defense stipulated that the evidence introduced at trial would serve as the revocation hearing. The jury was unable to agree on a verdict and reportedly was deadlocked eleven to one for acquittal. Facing a near unanimous verdict of acquittal, the state elected to *nolle prose* the domestic battery count and that charge was dismissed.

The trial court found that appellant had violated the conditions of his probation and imposed a sentence of five years. Appellant asks us to reverse on four assignments of error: 1) the trial court erred by denying appellant's *Batson* motion; 2) erred by allowing the prosecutor to state the specifics of a proposed plea bargain relative to the domestic battery count; 3) erred by admitting evidence of appellant's criminal history during the trial; and 4) erred by finding sufficient evidence that appellant had breached the conditions of his probation. We affirm the trial court.

■ Appellant's first three points for reversal relate to alleged trial errors. They cannot be addressed because the mistrial of the first-degree domestic battery charge renders them moot. *Johnson v. State*, 319 Ark. 3, 888 S.W.2d 661 (1994). The law affords no appeal absent a conviction. *Webb v. State*, 48 Ark. App. 216, 893 S.W.2d 357 (1995); Ark. R. App. P.—Crim. 1 (2000).

■ In the remaining point for reversal, insufficiency of the evidence for revocation, appellant insists he bore no lawful relationship to his step-daughter, the reputed victim. She was merely the daughter of his spouse and, hence, she did not come within the ambit of Ark. Code Ann. § 5-26-302, defining a "family or household members." We decline to consider this premise, however, because it was not offered to the trial court and may not be initiated

in this court. *Yancey v. State*, 71 Ark. App. 280, 30 S.W.3d 117 (2000).

Turning to the merits of point four, appellant concedes there was an altercation between his seventeen year old stepdaughter and himself, but he maintains she was the aggressor and he was merely defending himself in the face of her repeated threats that she would kill him. Admittedly, he pushed her, but only after she pushed him.

That version does not fully comport with the record. The stepdaughter testified she had previously resided with her mother and the appellant, but at the time of the altercation she only spent alternate weekends with them. During one such weekend an argument developed when she refused appellant's directive to wash the dishes. Words grew heated and she pushed appellant, he pushed her back and they fell to the floor in the struggle. Appellant's wife managed to separate them briefly but the fracas was soon renewed and appellant struck the young woman in the face with his fist. She described her face as scratched and swollen and her lip lacerated. She readily admitted she had pushed appellant and had twice told appellant she would kill him.

Two officers who had been called to the scene testified. One observed marks around her left eye, the other noted some swelling next to her eye. Another witness described her face as badly bruised and swollen.

There was testimony to the contrary. Appellant's spouse and his thirteen year old stepson testified. The latter essentially confirmed the particulars of the quarrel except he denied seeing appellant strike his sister. The former denied that appellant had either pushed or struck her daughter. She was unable to explain how her daughter's face got "all messed up."

With respect to the admitted threats by the stepdaughter directed toward the appellant, without discounting the seriousness of such remarks, nothing in the record suggests the young woman had either the means or the inclination to act accordingly, or that her words were taken seriously by the appellant. By all indications, they were simply an intemperate outburst spoken in anger, and we are satisfied the trial court viewed them in that light.

■ It was the prerogative of the trial court to resolve any discrepancies in the testimony and to determine, by a preponderance of the evidence, whether appellant's probation was revocable. His finding in the affirmative is entirely consistent with the proof.

■ Judge Roaf, in dissent, would distinguish this case from *Davis v. State*, 308 Ark. 481, 825 S.W.2d 584 (1992) and *Robinson v. State*, 14 Ark. App. 38, 684 S.W.2d 824 (1985). It remains, however, settled law that although the evidence may be insufficient in a probation revocation proceeding to sustain an allegation that appellant committed a specific offense, revocation will be sustained if the evidence establishes a lesser included offense. *See Selph v. State*, 264 Ark. 197, 570 S.W.2d 256 (1978); *Venable v. State*, 27 Ark. App. 289, 770 S.W.2d 170 (1989); *Felix v. State*, 20 Ark. App. 44, 723 S.W.2d 839 (1987).

Affirmed.

ROBBINS, BIRD and BAKER, JJ., agree.

GRIFFEN and ROAF, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I respectfully dissent from the decision reached by the majority and would hold that the trial judge erred when he held that Willis had (1) committed domestic battery, and (2) that the supposed violation was inexcusable. A fair-minded inquiry into whether the appellant committed domestic battery under any analysis must include a review of the evidence. All of the eye-witness accounts of the incident that triggered the probation revocation petition show that India Ledbetter threatened to kill appellant and began hitting him. After she paid a greater price than she apparently expected, she summoned the police and pursued the prosecution that resulted in appellant's sentence.

From the earliest times, human moral and legal codes have recognized the authority of parent figures to administer discipline in their homes. Moreover, civilized societies have uniformly upheld the view that a child who strikes a parent commits a serious violation of social order. The Code of Hammurabi, which continued in use for centuries and exerted considerable influence on Arabic and Islamic law, prescribed that the hands would be cut off a son who struck his father. The Second Book of Moses commands that parents are to be honored (*Exodus* 20:12). Under Mosaic law, to strike one's father or mother was a crime punishable by death (*Exodus*

21:15). It was a crime, punishable by death, to even curse a parent (*Exodus* 21:17). The Greek scholar and philosopher Plato affirmed in *The Republic* that an elder is duty bound to rule and chastise a younger, and that the younger will not "strike or do any other violence to an elder, nor will he slight him in any way. For there are two guardians, shame and fear, mighty to prevent him: shame, which makes men refrain from laying hands on those who are to them in the relation of parents; fear, that the injured one will be succored by the ones who are his brothers, sons, fathers."

Until this decision, I have found nothing in the laws of Arkansas, the United States, or in the legal or moral codes of any other society known to human history that supports the notion that a child may threaten to kill and then strike a parent figure with impunity. While modern society properly does not impose the death penalty for such conduct the way that ancient societies did, the whole body of law known to humanity offers no support whatsoever for the preposterous idea that a parent figure is obligated to retreat from such a rebellious child under any circumstances. But today, the majority upholds a decision by the trial court that adjudges this appellant guilty of inexcusably violating the conditions of his probation because he did not "run from" such an attack by his stepdaughter in his own home.

Although appellant's counsel raises several points for reversal, the only one with merit concerns whether the trial court clearly erred when it revoked appellant's 1997 probationary sentence following his guilty plea to third-degree battery. In 1999, new charges were filed against appellant for first-degree domestic battery arising from an altercation between appellant and India Ledbetter, his seventeen-year-old stepdaughter. The State also filed a petition for revocation. As the majority opinion indicates, the parties stipulated that the evidence in the domestic battery jury trial would constitute the record for the revocation hearing. After the jury deadlocked on the domestic battery charge in what was reported by the prosecution to be an eleven to one split for acquittal, the State elected to nolle prosequi and dismiss that charge. Nevertheless, the trial judge found that appellant had violated the conditions of his probation, specifically, the requirement that appellant, "obey all Federal and State laws, Local ordinances, and Court orders."

Appellant is married to Natalie Willis, the mother of India Ledbetter. Ledbetter was visiting the residence of her mother and appellant when the altercation took place. According to the testimony at trial, appellant and Willis went out to visit another relative

and returned home to find dirty dishes that Ledbetter left in the kitchen sink. Ledbetter's mother told her to wash the dishes; however, Ledbetter refused and tartly said she would wash the dishes the next day. When her brother (Cory Williams) commented to his mother that he was required to perform tasks immediately, appellant told Ledbetter that she needed to wash the dishes. Ledbetter then began arguing with appellant. Appellant walked away from Ledbetter and went into another room, but Ledbetter followed him and continued to argue. Ledbetter's mother (Willis) described what happened next:

> I went in the den and told them they needed to stop. They kept on arguing. I walked outside, when I came back in they were still arguing. They were up close to each other and India started pushing [appellant]. She first had threatened him. She told him, 'I will kill you' and then she pushed him. I saw him put his hands up and step back and told her not to push him anymore. She then said she'd push him again and she did. They grabbed each other. He grabbed her hair. She grabbed his shirt and I tried to get in the middle to pull them apart. I guess we lost our balance. We all hit the floor and were steady wrestling and I was trying to get them apart. I finally told [appellant] to let her hair go and told India to let his shirt go. They finally let each other go. Prior to the time she made the threat to kill him, she had pushed him and he had not put his hands on her. He did not ever purposely strike her or try to hit her during the little tussling. . . . He did not push her to the ground and get over and start pulling her hair. That happened when I tried to pull them apart and we all fell to the ground at the same time. . . .

Willis testified that after appellant and Ledbetter stopped wrestling, appellant tossed a beverage in Ledbetter's face while Ledbetter was using the phone.

Cory Williams, Ledbetter's twelve-year-old brother and appellant's stepson, also witnessed the incident between appellant and Ledbetter. Williams testified that Ledbetter refused their mother's directive to wash the dishes, began arguing with their mother about it, and then began arguing with appellant after he told her to wash the dishes. Williams also testified that Ledbetter pushed appellant, threatened to kill him, and that appellant splashed a drink in Ledbetter's face when she began phoning the police.

Ledbetter admitted in her testimony that she threatened appellant after he told her to wash the dishes, that she, "was hollering and

fussing when I said it," and that, "I fell to the floor, and I brought him down with me, and all I know is we were tussling and fighting." Ledbetter testified that although her eyes were closed, "I was trying to fight him . . . I cannot tell you exactly where he was hitting me. He did not hit me in the face. . . . When I fell on the ground, he had my braids in his hand, and he was pulling my braids.[1] He was just pulling them. I was on the ground when he pulled my braids out." At another point in her testimony, Ledbetter testified, "he did not hit me in the face the first time we were fighting, but he hit me in the face the second time." Although the evidence demonstrates that an altercation took place between Ledbetter and appellant, both Willis (her mother) and Williams (her brother) contradicted Ledbetter's testimony that appellant struck her in the face or caused the bruises and lacerations she described during her testimony.

Arkansas Code Annotated section 5-4-309(d) (1987) provides that if the trial court finds by a preponderance of the evidence that a defendant has *inexcusably* failed to comply with a condition of his suspension or probation, it may revoke the suspension or probation at any time prior to the expiration of the period of suspension or probation. On appellate review, we do not reverse the trial court's decision regarding probation revocation unless it is clearly against the preponderance of the evidence. We have previously reversed a trial court decision revoking probation for failure to pay court-ordered fees and fines upon a holding that the decision was clearly against the preponderance of the evidence when there was proof that the defendant had attempted to make payments and had attempted to explain his inability to make payments as ordered. *See Baldridge v. State*, 31 Ark. App. 114, 789 S.W.2d 735 (1990).

In the present case, the trial court's comments, after observing that appellant had two prior convictions for battery, are quite revealing:

> Well, I'll tell you what disturbs me in this case, is the fact that, you know, here's a gentleman that has these prior convictions, [that] are fighting, you know, with family members and, I would think, you know, with that hanging over his head and three years' probation and facing the penitentiary, that he would run like the dickens from another family fight. I mean, plus, he supposedly has gone to

---

[1] The braids that Ledbetter testified about were apparently woven into her hair, not pulled from her scalp.

> domestic abuse counseling and learned not to get into fights with family . . . and a seventeen-year-old girl pushes him and suddenly, they're in a brew-ha here because he just didn't back off and say, I'm not doing this or I'm going out and have a couple of iced tea or something and get out of here because I'm not going to get into a fight with you, because I know better than that.

Nothing supports the conclusion that appellant *inexcusably* failed to comply with the terms of his probation. While it is true that the State can establish a probation violation by evidence that is not sufficient to constitute a criminal conviction, Arkansas Code Annotated section 5-4-309(d) (Supp. 1999) clearly requires that the State prove that the defendant's failure to comply with probation terms is inexcusable. As noted by our supreme court in the recent decision of *Barbee v. State*, 346 Ark. 185, 56 S.W.3d 370 (2001), the term *inexcusable* means an inability to excuse or justify. The appellant in *Barbee* relied on information provided by the State that his driver's license was not suspended. After noting that Barbee complied with every other term of his probation and was observed by the trial court to be "tremendously rehabilitated," our supreme court reversed and remanded the case to the trial court. In the present case, I cannot agree that appellant's failure to comply was inexcusable in the face of compelling evidence that appellant was involved in an altercation after being baited, threatened, and assaulted *in his own residence*. His actions simply do not rise to the level of being without excuse, justification, or pardon.

Like the trial court and majority, I am opposed to domestic violence. However, I find nothing in law or logic that requires an adult to retreat in his own home from a rebellious, threatening, and abusive teenager. Here, all the proof shows that Ledbetter picked a fight with an adult in the adult's house. I refuse to dignify her insolence and disrespect by supporting a decision to send appellant to the penitentiary for refusing to run from her. The State, trial court, and majority have cited no rule of law in Arkansas or anywhere else that obligates a parental figure to retreat from an assault by a rebellious child. That overwhelming body of human experience is not nullified in the case of a person on probation. Therefore, I would reverse the trial court, and respectfully dissent from the majority opinion.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse and remand this petition for revocation because there is insufficient evidence to support the decision to revoke. The State's petition as abstracted provided only one basis for the revocation:

> The defendant has violated the terms of his probationary sentence in that on August 4, 1999, he committed the offense of Domestic Battery *in the First Degree*, which occurred after his probationary sentence. (Emphasis added.)

The issue is preserved for our review. On October 11, 2001, the supreme court overruled *Miner v. State*, 342 Ark. 283, 28 S.W.3d 280 (2000), and held that a motion for directed verdict is not required in a revocation proceeding in order to preserve the issue of sufficiency of the evidence for appeal. *Barbee v. State*, 346 Ark. 185, 56 S.W.3d 370 (2001).

Regarding the merits, there is no need to belabor the facts of this unfortunate family scuffle, as they are well-documented in the majority opinion and in Judge Griffen's dissent. By no stretch of the imagination do these facts support a finding that Obbie Willis committed Battery in the *First Degree*, domestic or otherwise, because it requires the infliction of serious physical injury. *See* Ark. Code Ann. § 5-26-303 (Supp. 2001).[1] On appeal, Willis argues that the evidence was insufficient to support the revocation, and correctly points out that the "sole basis for the revocation case" was the primary offense charged in the criminal trial.

I am not unmindful of *Davis v. State*, 308 Ark. 481, 825 S.W.2d 584 (1992), *Selph v. State*, 264 Ark. 197, 570 S.W.2d 256 (1978), *Venable v. State*, 27 Ark. App. 289, 770 S.W.2d 170 (1989), *Felix v. State*, 20 Ark. App. 44, 723 S.W.2d 839 (1987), and *Robinson v. State*, 14 Ark. App. 38, 684 S.W.2d 824 (1985), cases that would appear to support the proposition that this court could determine that Willis committed a lesser-included offense of first-degree battery, and affirm on that basis. Whether or not this is "well-settled" law, most of these cases are readily distinguishable. Only *Selph* and *Venable* are in any sense analogous in that both involve revocations based on a single new criminal charge. In *Davis*, the appellant was convicted of rape, and his probation was revoked based on the same conduct in a proceeding held prior to his rape trial. The trial court revoked Davis' probation based on the lesser-included offense of sexual abuse in the first degree, and the supreme court affirmed both the rape conviction and the probation revocation. In *Robinson*,

---

[1] Ark. Code Ann. § 5-26-303 was amended twice on the same date by the 1999 General Assembly. *See* Acts 1999, No. 1317, § 2 and No. 1365, § 1. Pursuant to Ark. Code Ann. § 1-2-207, the last enactment, No. 1365, has been codified.

the court of appeals, in reversing the revocation of appellant's suspended sentence that was based on the trial court's finding that a lesser-included offense was committed, held that third-degree battery was not a lesser-included offense of robbery and that the appellant had not been given notice that a battery charge would be the basis for revocation. Here, the State vigorously pursued only the charge of first-degree battery, misstated the law both below and now on appeal,[2] and is sticking to its guns on appeal that Willis committed a non-existent first-degree battery offense and not some lesser-included offense. Moreover, it is clear from the abstract that neither counsel nor the trial court was ever able to sort out the precise offense being charged. To affirm this revocation under these circumstances would result in the sort of rude justice that this court should not countenance.

Moreover, Willis's case is clearly distinguishable from the many cases in which our appellate courts have held that evidence that is insufficient for a criminal conviction may be sufficient for probation revocation. See e.g. Kirby v. State, 52 Ark. App. 161, 915 S.W.2d 736 (1996). Nor is it simply a matter of the credibility of the witnesses. The alleged victim's testimony does not even come close to making out a case for first degree battery, and there is no excuse for a trial court dispensing out slipshod justice in this fashion, or for this court to sanction it by affirming this revocation.

I would reverse.

GRIFFEN, J., joins.

---

[2] The State contends on appeal that Willis was charged with violating Ark. Code Ann. § 5-26-303(a)(4)(Supp. 2001). There is no such provision, and reference to this subsection is found only in the "A.C.R.C. Notes," following the text of the code, because it was contained only in the earlier uncodified act. See also footnote 1.

Obbie WILLIS *v.* STATE of Arkansas

CA CR 01-59                                              71 S.W.3d 61

Court of Appeals of Arkansas
Divisions II, III, and IV
Opinion delivered March 13, 2002[1]

JOHN MAUZY PITTMAN, Judge, concurring. I concur in the decision to deny appellant's petition for rehearing. I write for the limited purpose of responding to that part of appellant's petition in which he argues that his probation was erroneously revoked because he was improperly charged with having violated a "non-existent statue [sic]." Specifically, appellant argues that he was charged with having violated Ark. Code Ann. § 5-26-303(a)(4), which appellant contends did not exist because subsequent legislation had re-enacted section 5-26-303 without any mention of the contents of subsection (a)(4). *Compare* Acts 1317 and 1365 of 1999; *see* Arkansas Code Revision Commission notes following Ark. Code Ann. § 5-26-303 (Supp. 2001).

First, it should be pointed out that appellant did not clearly raise this argument in his first brief to this court. He has attempted to raise the issue for the first time in his petition for rehearing. Of course, arguments that are made below cannot be raised to this court for the first time in a reply brief, *Camp v. State*, 66 Ark. App. 134, 991 S.W.2d 611 (1999), much less in a petition for rehearing. *National Bank of Commerce v. Beavers*, 304 Ark. 81, 802 S.W.2d 132 (1991); *Garrett v. Andrews*, 294 Ark. 160, 744 S.W.2d 386, *cert. denied,* 487 U.S. 1219 (1988).

In any event, appellant is relying on a false factual premise. As pointed out in the original opinions in this case, the State (1) charged appellant by information with having committed the crime of first-degree domestic battery; and (2) filed a separate petition to revoke appellant's preexisting probation because he had violated its conditions by committing first-degree domestic battery. The criminal information specifically charged appellant with having committed battery in the manner specified only in the questionable Act 1317, found in the subsection (a)(4) mentioned in the A.C.R.C. notes. However, the propriety of that charge is not before us, as the criminal charge resulted in a hung jury and a *nolle prosequi* of the charge.

---

[1] *Reporter's note*: Only the concurring and dissenting opinions are published.

The only judgment before us is the order revoking appellant's probation. Contrary to appellant's argument, the State did not limit the probation-violation allegation against appellant to any specific manner of committing the offense; in this respect, the petition to revoke accused him only generally with having "committed the offense of Domestic Battery in the First Degree." It is undisputed that there are three ways to commit first-degree domestic battery aside from the provisions of the questionable Act 1317. *See* Ark. Code Ann. § 5-26-303 (a)(1) — (3). It is also true, as pointed out in the original majority opinion, that this court will affirm a revocation if the evidence is sufficient to support a finding that the defendant committed even a lesser-included offense of a charged offense. *See Selph v. State* 264 Ark. 197, 570 S.W.2d 256 (1978); *Venable v. State*, 27 Ark. App. 289, 770 S.W.2d 170 (1989); *Felix v. State*, 20 Ark. App. 44, 723 S.W.2d 839 (1987). Here, appellant did not complain about the general nature of the allegation in the petition to revoke, move for a bill of particulars, move to have the petition made more definite and certain, or request specific findings from the trial court. As such, the trial court was free to consider whether appellant's conduct constituted, in any manner, the commission of first-degree domestic battery or a lesser-included offense thereof.[1]

J OHN B. ROBBINS, Judge, concurring. I concur with the majority's decision to deny appellant's petition for rehearing; however, I write to clarify the factual scenario that was presented to us by this appeal. Appellant has two prior convictions for domestic battery, one of which resulted in a sentence of probation for three years. During this three-year period, a petition for revocation was filed in which it was alleged that appellant had violated the conditions of his probation by committing the offense of domestic battery in the first degree. At a hearing in the trial court the victim's testimony included the following:

> He was still fussing at my brother. I told him to leave my brother alone. I stood between him and my brother and he pushed me. I did threaten him before that, we had gotten into it [previously], and the day before this incident. I told him in the room that I would kill him and to leave me alone. I was hollering and fussing when I said it. I did not mean it, but I was mad. We were in the den when this happened. I fell on the floor, and I brought him

---

[1] One way of committing first-degree domestic battery is to "cause[] serious physical injury to a family or household member under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-26-303(a)(3). It is a lesser-included offense thereof to "recklessly cause[ ] physical injury to a family or household member." Ark. Code Ann. § 5-26-305(a)(3).

down with me, and all I know is we were tussling and fighting. My mother was trying to break it up. My eyes were closed, and I was trying to fight him, so I cannot tell you exactly in detail what exactly happened, I closed my eyes because he was hitting on me. I cannot tell you exactly where he was hitting me. He did not hit me in the face. We were on the floor tussling and fighting. We were on the floor and mom was trying to pull us apart, I got back up and I called 911 and talked to them, and told them what happened. My mother disconnected the phone, he had a drink in his hand, and he threw it in my face. I was on the telephone and I started crying, my mother disconnected the phone. I have no idea what he was drinking and the next thing that happened is I started fussing and cussing at him, because he threw the drink in my face and we fought again. The reason why I started fussing and cussing at him and how it happened the second time is I was in his face. I do not think I hit him first. He did not hit me in the face the first time we were fighting, but he hit me in the face the second time. It was with his fist. We were still fighting and I was trying to push him, get him away from me. My mother was trying to separate us, it finally stopped, I fell on the ground and he was pulling my braids, and then I just left him alone. When I fell on the ground, he had my braids in his hand, and he was pulling my braids. He was just pulling them. I was on the ground when he pulled my braids out. I do not remember how many, but it was a lot. I went into another room and used the telephone and called somebody to come get me, and I went and waited outside until they got there. As we were leaving, the police pulled up so we turned around and went back. When I made contact with the police. I had scratches on my face, my lip was busted, and my face was swollen. My eye was hurting, it was red. And my braids were all over the ground. Next day my whole side of my face was hurting, and I could not lay on it, it was swollen and red. It felt like a headache on my face. I was in substantial pain.

Although there was testimony to the contrary, this was a matter of credibility and the trial judge obviously believed the victim. Her testimony described two distinct altercations. Even if the victim precipitated the first altercation, it had ended and the victim was making a telephone call. Her mother disconnected the telephone and appellant threw a glass of some beverage in the victim's face, and the fight was on again. It was during this second altercation that the victim testified that appellant struck her in the face with his fist.

The dissenting opinion's rationale is premised on the applicability of Ark. Code Ann. § 5-2-605(1) (Repl. 1997), and *Sykes v. State*, 57 Ark. App. 5, 940 S.W.2d 888 (1997). However, this statute

and *Sykes* are inapplicable and irrelevant to this appeal. The grandmother-appellant in *Sykes* was the duly appointed guardian of the minor ward, her grandson. She spanked her grandson with a phone cord because she could not find her belt. The spanking did not result in any bruising, bleeding or welting. Such relationship of guardian and ward is expressly included within the coverage of 5-2-605(1). We applied 5-2-605(1) and held that the physical force was justified. Here, however, appellant is neither the parent, teacher, guardian, nor a person otherwise entrusted with the care and supervision of the victim. *See* Ark. Code Ann. § 5-2-605(1). She is the seventeen-year-old daughter of appellant's wife. While at some time in the past she had resided with her mother and appellant, she did not reside with them at the time of the altercation. She was merely visiting in their home the evening of the incident. Consequently, 5-2-605(1) and *Sykes* have no application and the trial court would have erred if it had relied on them.

Our decision of November 28, 2001, which affirmed the trial court's revocation of appellant's probation, was neither a mistake nor a departure from Arkansas law. We acted consistent with our laws in affirming the appeal, and we do so again now in denying appellant's petition for rehearing.

WENDELL L. GRIFFEN, Judge, dissenting. Our court rarely issues written opinions about decisions to deny petitions for rehearing. It is even more rare when nine judges are involved in this process; most rehearing petitions are reviewed and decided by the original three-judge panel that decided the case plus another three-judge panel. However, I am so convinced that our decision to deny rehearing in this instance is a mistaken departure from clear Arkansas law that I am obliged to write. We have denied rehearing in the instant appeal in the face of two statutes and at least one of our own decisions that contradict our original holding affirming the trial court's decision to revoke appellant's probation arising from his altercation with his stepdaughter.

Arkansas Code Annotated section 5-2-605(1) (Repl. 1997) states:

> The use upon another person of physical force that would otherwise constitute an offense is justifiable under any of the following circumstances: (1) A parent, teacher, guardian, or other person entrusted with care and supervision of a minor or an incompetent person may use reasonable and appropriate physical force upon the minor or incompetent person when and to the extent reasonably necessary to maintain discipline or to promote the welfare of the minor or incompetent person.

Our court based its decision to reverse a conviction of a grandmother for second–degree battery on this statute. *See Sykes v. State,* 57 Ark. App. 5, 940 S.W.2d 888 (1997). The appellant in that case was convicted for spanking her eleven–year–old grandson with a phone cord after the grandson was apprehended by the police for trespassing on private property. She argued on appeal that the evidence was insufficient to support her conviction. Photographs taken ten minutes after the spanking occurred showed welts on the minor's arm, a mark on his leg, and a mark on his bottom. Our court held that the evidence was insufficient to support a finding that the physical force used by the appellant in that case was unreasonable or inappropriate under the circumstances, while acknowledging that "[t]here may be more desirable methods of correction that could have been utilized in this situation. . . ."

If using a phone cord and raising welts on an eleven–year–old boy in the course of a spanking is insufficient to support a conviction for second–degree battery because of the previously cited statute, our original decision holding that appellant's conduct was willfully inexcusable in an altercation with his seventeen–year–old stepdaughter who threatened to kill him and assaulted him with her fists in his home is a mistake. Resisting hand–to–hand assault from a teenager and inflicting minor injuries in the process certainly constitutes justifiable use of physical force. If not, section 5-2-605(1) makes no sense.

Moreover, Arkansas Code Annotated section 5-2-606(a) (Repl. 1997) makes the error of our original decision even more obvious. That statute reads:

> A person is justified in using physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force that he reasonably believes to be necessary. . . .

Here, appellant did not provoke the altercation with his stepdaughter, was not the initial aggressor, and the physical force involved did not result from combat by agreement. There is no proof that appellant acted maliciously, with evil motive, or for any purpose other than to defend himself and his parental authority from the assault launched by his stepdaughter after he told her to obey her mother's directive to wash the dishes. Nevertheless, we are denying the petition for rehearing in the face of this proof and the plain language of section 5-2-606(a) which declares the use of physical force in such a situation "justified."

These Arkansas statutes and our *Sykes* decision plainly demonstrate the error of our original decision and show why the petition for rehearing should be granted. Contrary to the rationale declared in the original majority opinion, the original decision does not rest on witness credibility. The undisputed evidence shows that India Ledbetter (the stepdaughter) sustained bruises to her face in the course of the altercation she initiated with appellant. All the evidence — including Ledbetter's own testimony — shows that Ledbetter (a weekend guest) initiated the altercation, threatened to kill appellant, assaulted him with her fists, and then pursued him into another room of his house to continue the assault.

If Arkansas law does not justify the use of physical force in such a situation, any parental figure confronted by a defiant and violent youth not only risks physical danger, but faces loss of all reasonable expectation of authority in the home. Nothing in the cited statutes, our *Sykes* decision, or anything else in Arkansas law supports the notion that the people of this State intend to undermine the parental role by forcing parent figures facing such assaults to run from rebellious children and leave their homes.

I am authorized to state that Judges NEAL and CRABTREE join in this dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I would grant Obbie Willis's petition for rehearing and reverse this revocation for the reasons set out in my dissenting opinion on November 28, 2001, and because contrary to the State's assertion, opinions of the Attorney General are *not* accorded the status of binding precedent by the appellate courts of this State. *City of Fayetteville v. Edmark*, 304 Ark. 179, 801 S.W.2d 275 (1990); *Klinger v. City of Fayetteville*, 293 Ark. 128, 732 S.W.2d 859 (1987). Consequently, it is for a court to say whether there is such an offense as "first-degree domestic battery," Ark. Code Ann. § 5-36-303(a)(4), not the Attorney General. Courts should likewise decide whether it is permissible to send a man to the penitentiary based on a nonexistent criminal offense, as long as the evidence shows that he possibly committed some other uncharged offense. To do so is indeed to dispense "slipshod justice," and while Willis may not have made the most cogent argument in this respect, he did assert that the sole basis for his revocation was "the primary charged offense" — an offense that does not exist in Arkansas.