Jimmy Lynn PYLE and John F. Tunnicliff *v.* STATE of Arkansas

CR 99-85                                                8 S.W.3d 491

Supreme Court of Arkansas
Opinion delivered January 13, 2000

*Louis Etoch*, for appellant Jimmy Lynn Pyle.

*Chris Carter*, for appellant John F. Tunnicliff.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellants Jimmy Lynn Pyle and John F. Tunnicliff appeal the judgments of the Baxter County Circuit Court convicting each of them of two counts of possession of methamphetamine and one count of simultaneous possession of drugs and firearms. In addition, Pyle appeals his convictions of one count of possession of marijuana and one count of possession of drug paraphernalia. Tunnicliff appeals his conviction of being a felon in possession of a firearm. Pyle was sentenced to a term of life imprisonment. Tunnicliff was sentenced to a term of fifty years' imprisonment. Our jurisdiction is thus pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Each Appellant raises several points for reversal. We find no error and affirm.

*Facts*

Tunnicliff and Pyle were arrested following a prearranged reverse-buy sting operation in Mountain Home when an undercover police agent sold them methamphetamine. The police had been working with a confidential informant who was an acquaintance of Tunnicliff's and knew that he wanted to purchase methamphetamine. The informant had agreed to work with law enforcement officials in exchange for the dismissal of charges pend-

ing against him, namely driving while intoxicated (DWI) and possession of marijuana.

The informant contacted Tunnicliff and offered to arrange a sale of three ounces of crystal methamphetamine at a price of $1,300 per ounce. Tunnicliff agreed to the purchase, and a meeting was arranged for the following day at a nearby storage facility. Tunnicliff, however, failed to appear at that meeting. The informant again contacted Tunnicliff, who explained that he was unable to find transportation to the meeting. Another meeting was scheduled, and Tunnicliff told the informant he would arrive at the meeting in a white car. The following day, Tunnicliff arrived at the storage facility in a white Lincoln driven by Pyle. An undercover officer was present along with the informant. The officer passed the drugs to Tunnicliff and Pyle. Both men inspected the quality of the drugs by sniffing them; Tunnicliff even went so far as to taste them. Tunnicliff and Pyle purchased all three ounces of the methamphetamine, and subsequently, both men were arrested.

Police conducted an inventory search of the car, which was registered to Pyle. A black bag was found in the front seat of the vehicle. It contained a checkbook belonging to Pyle, a marijuana cigarette, and a semi-automatic handgun. Police also found a small gray case in a pouch behind the driver's seat that contained drug paraphernalia and marijuana. Additional crystal methamphetamine was also found in the car. Officers testified that at the time of his arrest, Pyle had a white powdery substance on his moustache. A video tape was also introduced at trial that depicted Pyle having problems with his nose while he was being held after his arrest. Furthermore, a search of both suspects revealed that each man was carrying large amounts of cash on his person.

Following his arrest, Tunnicliff completed and signed a sworn affidavit stating the Pyle did not have any knowledge of the pending drug sale. Tunnicliff, who is disabled, stated that he told Pyle he needed a ride to the storage facility to look at some furniture he was thinking of buying. Tunnicliff also claimed that the handgun belonged to the informant and that Tunnicliff had concealed it on his person until the time of the drug transaction. At trial, Tunnicliff, who asserted the affirmative defense of entrapment, testified that the facts contained in his affidavit were true. Pyle, who relied on the defense of lack of evidence, did not testify at trial. Following

their convictions, each Appellant filed a motion for a new trial. Both motions were denied, and this appeal followed.

*Appellants' Joint Issues on Appeal*

■ ■ Appellants assert that there are overlapping issues presented in this matter. In his brief, Pyle attempts to incorporate three of Tunnicliff's points for reversal: (1) the reverse-buy operation amounted to entrapment as a matter of law; (2) it was illegal for law enforcement officers to use real drugs during the sting operation; and (3) the confidential informant should not have been allowed to testify. During the trial of this matter, however, Pyle never attempted to argue any of these points. He never asserted the affirmative defense of entrapment or sought a jury instruction on that defense. Pyle also failed to object to the law enforcement officers' use of real drugs during the reverse buy. Our law is well settled that we will not consider an argument raised for the first time on appeal. *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998); *McGhee v. State*, 330 Ark. 38, 954 S.W.2d 206 (1997). A party cannot change the grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial. *Ayers*, 334 Ark. 258, 975 S.W.2d 88; *Henderson v. State*, 329 Ark. 526, 953 S.W.2d 26 (1997). Pyle's failure to raise the arguments relating to the reverse buy and the use of real drugs in that buy precludes our review of those points as applicable to his appeal.

As to the issue whether the confidential informant should have been allowed to testify, Tunnicliff and Pyle argue that it was illegal for the State to drop the DWI charge pending against the informant in exchange for his cooperation because Arkansas law provides that no such charges shall be reduced. *See* Ark. Code Ann. § 5-65-107 (Repl. 1977). It is their contention that such action is tantamount to bribery, and thus, the informant should not have been allowed to testify. Their argument fails because neither Tunnicliff nor Pyle ever objected to the informant testifying. In fact, they made no objections to any of the statements he made while on the witness stand. Only Tunnicliff raised the issue at all, but not until the close of the State's case.

■ The law is well settled that to preserve an issue for appeal a defendant must object at the first opportunity. *Vaughn v. State*, 338

Ark. 220, 992 S.W.2d 785 (1999); *Smallwood v. State*, 326 Ark. 813, 935 S.W.2d 530 (1996); *Hill v. State*, 285 Ark. 77, 685 S.W.2d 495 (1985). In *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998), this court stated that a party who does not object to the introduction of evidence at the first opportunity waives such an argument on appeal. The policy reason behind this rule is that a trial court should be given an opportunity to correct any error early in the trial, perhaps before any prejudice occurs. *Id.* Thus, their failure to object to the informant's testimony at the first opportunity bars them from arguing this point on appeal. We turn next to those issues raised solely by Tunnicliff.

### Tunnicliff's Issues on Appeal

Tunnicliff contends that the trial court erred in finding that the use of a reverse buy is permissible under Arkansas law. He argues that nothing in Arkansas law permits law enforcement officials to participate in reverse buys. Tunnicliff argues further that reverse buys violate Ark. Code Ann. § 5-64-401(a) (Repl. 1997), which prohibits the sale of controlled substances by any persons, and that there is no statutory exception for police officers to sell controlled substances. Tunnicliff urges this court to adopt the holdings of a minority of jurisdictions that have held that reverse buys constitute entrapment as a matter of law.

While this is an issue of first impression in this jurisdiction, the Eighth Circuit Court of Appeals has recently held that participation by government agents or informants in the illegal manufacture or distribution of drugs is a recognized means for the government to obtain convictions in drug-related offenses. *United States v. Berg*, 178 F.3d 976 (8th Cir. 1999). The *Berg* decision does discuss the possibility of the government's conduct being so outrageous as to warrant reversal of a conviction. The facts of this case, however, do not give rise to a finding of outrageous government conduct. Indeed, Tunnicliff presents no convincing argument as to why this court should hold that reverse buys constitute entrapment as a matter of law. This court has consistently refused to consider an argument where it is not apparent without further research that the argument is well taken. *See, e.g., McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999); *Miller v. State*, 328 Ark. 121, 942 S.W.2d

825 (1997). Accordingly, we will not consider Tunnicliff's argument regarding reverse buys on appeal.

Related to the legality of the use of a reverse buy is the issue whether the police are allowed to use real drugs during a reverse buy. Tunnicliff argues that the Uniform Controlled Substance Act, codified at Ark. Code Ann. §§ 5-64-101 to -608 (Repl. 1997), does not provide an exception for any person to engage in the sale of drugs, including law enforcement officials. This argument ignores, however, section 5-64-506, which specifically exempts state officers from liability under the Act when engaged in the performance of their duties. In adopting this exception, the legislature clearly recognized the possible need of law enforcement officials to utilize real drugs during the course of undercover sting operations. The very facts of this case indicate the necessity of using real drugs in undercover operations. According to the testimony of eyewitnesses, both Tunnicliff and Pyle sampled the substance to be sold before handing over the cash. If a counterfeit substance had been used, law enforcement officials may well have been placed in danger, a danger made even more real by the fact that a firearm was found in Pyle's car.

Tunnicliff also argues that the only reason real drugs were used was to enhance any penalty received as a result of a conviction. Again, Tunnicliff fails to support this argument with any convincing legal authority. Absent any convincing argument or authority, we will not consider this issue on appeal. *McGehee*, 338 Ark. 152, 992 S.W.2d 110; *Miller*, 328 Ark. 121, 942 S.W.2d 825.

Next, Tunnicliff argues that it was error for the trial court to refuse to dismiss the firearm charges against him. At the close of the prosecution's case, Tunnicliff moved to dismiss the firearm charges on the ground that there was not substantial evidence to link him to the gun. As the State correctly points out, however, Tunnicliff failed to renew this motion at the conclusion of the case. As we stated in *King v. State*, 338 Ark. 591, 999 S.W.2d 183 (1999), our procedural rules require that a motion for a directed verdict be brought at the conclusion of the prosecution's evidence and again at the close of the case. *See also* Ark. R. Crim. P. 33.1. Tunnicliff's failure to renew his motion at the close of his case precludes our review of this point.

■ ■ Finally, Tunnicliff argues that the trial court erred in running the sentences for the firearm convictions consecutively instead of concurrently. It is well established that the question whether sentences should run consecutively or concurrently lies solely within the province of the trial court. *Brown v. State*, 326 Ark. 56, 931 S.W.2d 80 (1996); *Love v. State*, 324 Ark. 526, 922 S.W.2d 701 (1996). The appellant assumes a heavy burden of demonstrating that the trial judge failed to give due consideration to the exercise of his discretion in the matter of the consecutive sentences. *Teague v. State*, 328 Ark. 724, 946 S.W.2d 670 (1997); *Brown*, 326 Ark. 56, 931 S.W.2d 80. The only reason Tunnicliff sets forth in support of his contention that the trial court abused its discretion is that the court gave no reason for running the drug sentences concurrently while running the firearm sentences consecutively. The trial court, however, is not required to explain its reason for running sentences consecutively. *See Smallwood*, 326 Ark. 813, 935 S.W.2d 530. Tunnicliff has thus failed to bear his burden of proof with regard to this point on appeal. We, therefore, cannot say that the trial court abused its discretion in running the sentences consecutively. Having concluded that there is no merit to Tunnicliff's arguments, we address those points raised solely by Pyle.

### Pyle's Issues on Appeal

■ Pyle's first argument is that the trial court erred in refusing to dismiss the charges against him for lack of evidence. The record reflects that Pyle moved for a directed verdict at the close of the State's case, arguing that there was not substantial evidence to link him to any of the charges. Specifically, defense counsel stated:

> Your Honor, I'd move for a directed verdict on all charges on grounds of insufficient evidence. The State has presented numerous theories, none of which are supported by direct evidence linked to my client. I feel that the evidence is insufficient as a matter of law and move for a directed verdict on all charges.

Pyle's motion was insufficient to preserve this issue for appellate review. Ark. R. Crim. P. 33.1 provides in relevant part:

> A motion for a directed verdict based on insufficiency of the evidence must specify the respect in which the evidence is deficient; *a motion merely stating that the evidence is insufficient for conviction*

*does not preserve for appeal issues relating to a specific deficiency* such as insufficient proof on the elements of the offense. [Emphasis added.]

This court has stated that a general motion for a directed verdict does not preserve for appeal issues regarding sufficiency of the evidence. *Fultz v. State,* 333 Ark. 586, 972 S.W.2d 222 (1998). Accordingly, we will not address Pyle's argument pertaining to the sufficiency of the evidence.

■■■ Pyle's remaining argument on appeal is that the trial court erred in refusing to grant his motion for a new trial because of ineffective assistance of counsel. Ordinarily, such claims are raised under Ark. R. Crim. P. 37. This court, however, has addressed claims of ineffectiveness on direct appeal when the issues were previously considered by the trial court, as on a motion for a new trial, and the facts surrounding the claim were fully developed. *See Willis v. State,* 334 Ark. 412, 977 S.W.2d 890 (1998); *Smith v. State,* 328 Ark. 249, 943 S.W.2d 234 (1997). To prevail on any claim of ineffective assistance of counsel, a petitioner must show first that counsel's performance was deficient. *Weaver v. State,* 339 Ark. 97, 3 S.W.3d 323 (1999); *Thomas v. State,* 330 Ark. 442, 954 S.W.2d 255 (1997). In order to establish such deficient performance, it must be shown that counsel was not functioning as the " 'counsel' guaranteed the petitioner by the Sixth Amendment." *Id.* at 447, 954 S.W.2d at 257. Petitioner must also show that the deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* We will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *State v. Dillard,* 338 Ark. 571, 998 S.W.2d 750 (1999); *State v. Herred,* 332 Ark. 241, 964 S.W.2d 391 (1998).

Pyle's first allegation involves a purported failure by counsel to enforce a plea bargain. The record reflects that several discussions took place between counsel for Pyle and the deputy prosecuting attorney regarding a possible plea agreement. The deputy prosecuting attorney testified that Pyle never accepted any of the offers he made. Pyle alleges that his attorney communicated to him, on the morning of the trial, a plea bargain of ten years' imprisonment, which he accepted. Pyle further alleges that the State then conditioned his plea agreement on Tunnicliff also accepting a plea agreement. The deputy prosecuting attorney denied ever placing such a

condition on any plea agreement. Tunnicliff's trial counsel testified that the prosecuting attorney had made such a conditional offer, but that his client refused to plead guilty.

This court has held that until a trial court accepts a plea bargain, it has no binding effect. *See Kilgore v. State*, 313 Ark. 198, 852 S.W.2d 810 (1993); *Caldwell v. State*, 295 Ark. 149, 747 S.W.2d 99 (1988). Nothing in the record indicates that Pyle ever attempted to alert the trial court to the fact that he had accepted a plea. He sat through the entire guilt and sentencing phases without any indication that a plea agreement had been accepted. The trial court found that a formal plea never existed, although there had been communications about a possible plea agreement. Based on the foregoing, we cannot say that the trial court erred in finding that no plea agreement existed. We recognize that the testimony regarding the purported plea agreement was in conflict, but conflicts in testimony are for the trial court to resolve, as it is in a superior position to determine the credibility of witnesses. *McCoy v. State*, 325 Ark. 155, 925 S.W.2d 391 (1996). We, therefore, cannot say that Pyle's counsel was ineffective for not enforcing a plea agreement that never existed.

Pyle's second argument on this point is based on his attorney's failure to have his trial severed from Tunnicliff's. Trial counsel testified that he did not seek to sever Pyle's charges because there was an implied joint-defense agreement with Tunnicliff's counsel that Tunnicliff would stand by his affidavit and testify accordingly. The trial court pointed out that it seemed advantageous to try these cases together, considering that Pyle was relying on the defense of innocence, while Tunnicliff accepted all the blame. We agree with the trial court's finding that Appellants' defenses were never antagonistic and, thus, did not warrant severance. This court has repeatedly held that a lawyer's choice of trial strategy, even if it proved ineffective, is not a basis for meeting the test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). *State v. Slocum*, 332 Ark. 207, 964 S.W.2d 388 (1998); *Vickers v. State*, 320 Ark. 437, 898 S.W.2d 26 (1995). The decision whether to seek severance is one of strategy. *Coston v. State*, 284 Ark. 144, 680 S.W.2d 107 (1984). Accordingly, Pyle's argument on this point is without merit.

Next, Pyle argues that his attorney was ineffective for failing to seek an entrapment instruction. There is no merit to this point. Our law is well established that, if a defendant denies committing an offense, he cannot assert that he was entrapped into committing the offense. *Weaver*, 339 Ark. 97, 3 S.W.3d 323; *Heritage v. State*, 326 Ark. 839, 936 S.W.2d 499 (1996); *Young v. State*, 308 Ark. 647, 826 S.W.2d 814 (1992). In *Vickers*, 320 Ark. 437, 898 S.W.2d 26, this court held that an attorney cannot be declared ineffective for failing to present a defense theory entirely inconsistent with the defendant's denial of committing the crime. Pyle's entire defense centered on the fact that he was innocent, with Tunnicliff accepting all blame. He cannot now claim that his attorney was ineffective for failing to seek an entrapment instruction, which was inconsistent with his defense.

Pyle's fourth claim is that his counsel was ineffective for failing to object or seek an admonition when Tunnicliff stated that he had testified on Pyle's behalf at a parole hearing. This argument, however, is not properly preserved for appellate review. Pyle never argued the impropriety of this statement at trial, in his motion for a new trial, or during the posttrial hearing. This court has refused to consider such a claim unless the surrounding facts and circumstances were fully developed either during the trial or during other hearings conducted by the trial court. *Walker v. State*, 330 Ark. 652, 955 S.W.2d 905 (1997). Because Pyle failed to raise this claim below, we will not consider it.

Finally, Pyle claims his counsel was ineffective for failing to call any witnesses during the sentencing phase. Pyle argues that his counsel should have at least called his wife to testify during the sentencing phase, and that he was prejudiced by the lack of any mitigating evidence presented during the sentencing phase. Again, decisions regarding witness testimony are matters of trial strategy. *See Catlett v. State*, 331 Ark. 270, 962 S.W.2d 313 (1998); *Helton v. State*, 325 Ark. 140, 924 S.W.2d 239 (1996). As previously pointed out, a lawyer's choice of trial strategy, even one that proved ineffective, is not a basis for meeting the *Strickland* test. *Slocum*, 332 Ark. 207, 964 S.W.2d 388. Additionally, Pyle fails to establish what his wife or any other witness would have testified to, and he fails to show how their testimony would have changed the outcome of his case. When a petitioner fails to show what the omitted testimony was and how it could have changed the outcome, we will not grant

postconviction relief for ineffective assistance of counsel. *Johnson v. State*, 321 Ark. 117, 900 S.W.2d 940 (1995). For this reason, Pyle's argument on this point fails.

*Rule 4-3(h) Review*

Because Pyle received a life sentence, his record has been reviewed for prejudicial error in compliance with Ark. Sup. Ct. R. 4-3(h), and no reversible errors were found.