Shawn BARBEE *v.* STATE of Arkansas

CR 01-515                                          56 S.W.3d 370

Supreme Court of Arkansas
Opinion delivered October 11, 2001
[Petition for rehearing denied November 15, 2001.]

*Bridewell & Bridewell*, by: *Robert G. Bridewell*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Shawn Barbee, petitioned for review from an unpublished court of appeals decision affirming revocation of his parole and imposition of a six-year sentence of imprisonment. We granted the petition for review and now reverse the court of appeals and the trial court.

On March 17, 1997, appellant pled guilty to three counts of negligent homicide and was sentenced to five years' probation. One of the conditions of his probation was that his driver's license was revoked for a period of three years. On January 10, 2000, the State filed a petition to revoke appellant's probation, alleging that he had been driving during the period when his license was revoked. At the revocation hearing, appellant admitted that he had driven a vehicle, but he asserted that he had driven only after he was informed by the Chicot County Revenue Office that his driving record was clear and he was issued a valid driver's license.

The facts upon which appellant's probation was revoked are as follows. In December 1998, appellant went to the Chicot County Revenue Office to obtain an identification card in order to get his

marriage license. The employee assisting him informed him that he had a "clean" driving record; therefore, he could only get a driver's license, not an identification card. Because of the conditions of his probation, appellant asked the clerk to check his record again; she did so and informed him that his driving privileges were not suspended. The State of Arkansas then issued appellant a valid driver's license. At the revocation hearing, the revenue office employee who issued appellant his driver's license testified that the information in the computer could not be manipulated and that she had no choice but to issue a driver's license to appellant because his license was not suspended.

On October 21, 1999, appellant was the driver of a car stopped by Lake Village Police Officer Jason Gregg, based on a report of a suspected drunken driver. Officer Gregg testified that he checked appellant's license, determined that it was valid, found no alcoholic beverages in the vehicle, and allowed him to drive away. Nevertheless, the State filed its petition to revoke appellant's probation based upon the fact that his driver's license had been revoked.

The trial judge found that appellant had violated the terms of his probation, revoked the probation, and sentenced him to six years' incarceration in the Arkansas Department of Correction. Appellant now appeals, arguing that the trial court was clearly erroneous in revoking his probation under Ark. Code Ann. § 5-4-309 (Supp. 1999), for driving a vehicle after the reinstatement of his driver's license by the Arkansas Department of Finance and Administration.

*I. Standard of Review*

When we grant a petition for review pursuant to Ark. Sup. Ct. R. 2-4, we treat the appeal as if it were filed in this court originally. *Yancey v. State*, 345 Ark. 103, 44 S.W.3d 315 (2001); *Tucker v. Roberts-McNutt, Inc.*, 342 Ark. 511, 29 S.W.3d 706 (2000); *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). A trial court may revoke a defendant's probation if it finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his probation. Ark. Code Ann. § 5-4-309(d). In probation-revocation proceedings, the State has the burden of proving that appellant violated the terms of his probation, as alleged in the revocation petition, by a preponderance of the evidence, and this Court will not reverse the trial court's decision to revoke probation unless it is

clearly against the preponderance of the evidence. *Lemons v. State,* 310 Ark. 631, 951 S.W.2d 559 (1997).

## II. Miner v. State

In affirming the trial court, the Arkansas Court of Appeals cited *Miner v. State,* 342 Ark. 283, 27 S.W.3d 280 (2000), and declined to reach appellant's argument because he did not request a directed verdict and dismissal until after he was sentenced. In *Miner, supra,* this Court applied the requirements of Ark. R. Crim. P. 33.1 (2000) to revocation hearings so that motions for directed verdict and to dismiss must be requested after presentation of all the evidence, just as in non-jury trials. Appellant asks that this Court reconsider its holding in *Miner;* or, in the alternative, modify *Miner* so that it does not affect cases decided *before* April 26, 2000, the date of the *Miner* decision.

■ Appellant points out that *Miner, supra,* was decided *after* his revocation hearing. Appellant reminds the Court that revocations are not like "trials" specified in Ark. R. Crim. P. 33.1, where the rules of evidence do apply and the burden of proof is beyond a reasonable doubt. Indeed, revocation hearings are informal hearings, where rules of evidence are not followed and the burden of proof is by a preponderance of the evidence.

The State maintains that *Miner* should apply and that appellant's argument was not preserved for appeal. The State asserts that *Miner* did not *create* new law, but simply interpreted Rule 33.1(b). Rule 33.1 had been amended on April 8, 1999, to require a defendant to make timely motions for directed verdict and dismissal in non-jury trials, just as in jury trials — at the end of the evidence. This Court, in a 5-2 decision on April 26, 2000, in the *Miner* case, interpreted this amendment to apply to revocation hearings, as well. Appellant's revocation hearing was held on January 31, 2000, indeed after the effective date of the amendment of Rule 33.1, but before this Court interpreted same to be applicable to revocation hearings. We now reconsider our holding in *Miner* and find appellant's argument persuasive.

■■ We hold that our decision in *Miner, supra,* was incorrect; as such, we hold that Ark. R. Crim. P. 33.1 and the requirements thereof, pertaining to motions for dismissal and directed verdicts, do not apply to revocation hearings. Consequently, we hold that

appellant's motion for directed verdict made after sentencing was proper and did preserve his argument for appeal.

### III. Failure to Comply with Terms of Probation

Appellant asserts that the basis for revocation in this case was not his fault, that the evidence showed that he had been an exemplary probationer, and that the trial court noted that he was "tremendously rehabilitated." Citing Ark. Code Ann. § 5-4-309(d), he argues that he did not *inexcusably* fail to comply with a condition of his probation. We agree.

■■ The term "inexcusable" is defined as "incapable of being excused or justified — Syn. unpardonable, unforgivable, intolerable." *Random House Compact Unabridged Dictionary* 977 (1996). Certainly, the facts of this case are unique, and the resulting six-year prison term is unduly harsh. Appellant was a model probationer whom the trial court admitted was "tremendously rehabilitated." He was incorrectly given a driver's license *by the State*, although he only attempted to obtain an identification card in order to get a marriage license. Appellant relied upon the revenue office clerk's information that his driver's license was not suspended; and, although he did drive during the period of his probation, he received no traffic citations and committed no further criminal activity. He complied with every other term of his probation. Surely, his reliance upon the *State* revenue office that he was allowed to have a driver's license, after he asked the clerk to check again to be sure, would constitute forgivable, pardonable, *excusable* behavior for his failure to strictly comply with the terms of his probation. As such, given the unique facts of this case, we reverse and remand the case to the trial court, thereby reversing and remanding the court of appeals' opinion.

Reversed and remanded.

GLAZE, BROWN, and IMBER, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. The underlying crimes in this case were three counts of negligent homicide associated with driving while intoxicated. There were three deaths that resulted — Barbee's child, his girlfriend, and another friend. Barbee pled guilty to these counts and was sentenced to ninety days in jail, six months of in-house alcohol rehabilitation, sixty months of supervised probation, costs and fines, and a three-

year revocation of his driver's license. He began driving before the three-year revocation period had expired. Barbee argued at the revocation hearing before the circuit judge that his premature driving was "excusable." The circuit judge disagreed and revoked his probation. I cannot say that the circuit judge was clearly erroneous in his finding, and for that reason I dissent.

The majority tries to justify its departure from the circuit judge's finding by saying this is a *unique* case. This case, most assuredly, turns on its facts, but it hardly qualifies as unique. The majority then reverses the circuit judge without applying our standard of review. In order to reverse the circuit judge, we must hold that his finding was clearly erroneous. *See* Ark. R. Civ. P. 52(a). Our caselaw is legion in support of this principle. *See, e.g., Lemons v. State*, 310 Ark. 381, 836 S.W.2d 861 (1992) (stating that a trial court's findings in a probation revocation hearing will be upheld unless clearly against the preponderance of the evidence). The majority cites the *Lemons* case but avoids discussion of this substantial hurdle.

Then there is the issue of assessing witness credibility. The circuit judge did exactly that. Here is what the circuit judge said at the conclusion of the revocation hearing:

> THE COURT: You know, witnesses were sworn. I listened to the testimony. And based upon the testimony I reached a finding. And I'm not of the opinion that documentary evidence is required. So I'll deny that motion.

> ....

> THE COURT: Well, you know, he certainly —

> I know I take these matters serious. And you have credible witnesses on both sides. Who do you believe when they're saying something differently?

> And I was convinced that Mr. Barbee was instructed when his driver's license were, the effect of revoking, the effect of having a driver's license revoked is that you should not drive. And I just, here again, I don't want to go on hindsight —

> DEFENSE COUNSEL: Your Honor —

THE COURT: — but I'm convinced that he had violated — I stand behind the findings that he had violated condition number nineteen.

....

The underlying charge here is the three lives that were taken. That weighed heavily upon my making this choice.

It is boilerplate law that this court defers to the trial court in matters of witness credibility. We never deviate from that principle. What follows is a sampling of cases where we recognized that doctrine in no uncertain terms: *Hale v. State*, 343 Ark. 62, 31 S.W.3d 850 (2000) (this court will not second-guess credibility determinations); *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000) (conflicts in testimony are for the trial court to resolve, as it is in a superior position to determine the credibility of witnesses); *Rankin v. State*, 338 Ark. 723, 1 S.W.3d 14 (1999) (credibility of witnesses who testify at a suppression hearing is for the trial judge to determine, and this court defers to the superior position of the trial judge in matters of credibility); *Wright v. State*, 335 Ark. 395, 983 S.W.2d 397 (1998) (credibility of witnesses who testify at a suppression hearing is for the trial judge to determine, and this court defers to the superior position of the trial judge in matters of credibility); *Tabor v. State*, 333 Ark. 429, 971 S.W.2d 227 (1998) (credibility of witnesses who testify at a suppression hearing is for the trial judge to determine, and this court defers to the superior position of the trial judge in matters of credibility); *Stephens v. State*, 328 Ark. 81, 941 S.W.2d 411 (1997) (this court has repeatedly held that it will defer to the trial court's finding of fact when the only determination is credibility of a witness); *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997) (this court defers to the trial court's superior position to evaluate the credibility of witnesses); *Hill v. State*, 325 Ark. 419, 931 S.W.2d 64 (1996) (a trial judge is in the best position to determine the credibility of the witnesses at a *Denno* hearing, and his determination that appellant voluntarily confessed was not clearly erroneous); *McCoy v. State*, 325 Ark. 155, 925 S.W.2d 391 (1996) (conflicts in testimony are for the trial court to resolve, as it is in a superior position to determine the credibility of the witnesses); *Davis v. State*, 318 Ark. 212, 885 S.W.2d 292 (1994) (credibility of witnesses who testify at a suppression hearing is for the trial judge to determine, and this court defers to the superior position of the trial court in matters of credibility).

Why a majority of this court has departed from this well-settled principle in this case is troublesome. But that is precisely what the majority has done. It has weighed the evidence, assessed witness credibility, and then adopted Barbee's theory of this case. In doing so, the majority has implicitly concluded that the circuit judge clearly erred.

This case of negligent homicide was an extremely serious matter. Drinking was involved. Three people were killed. The judge heard all of the evidence on why Barbee began driving before his three-year probation expired. The judge apparently did not believe Barbee when he said he was misled by the Chicot County Revenue Office. Rather, the judge concluded that Barbee took advantage of a computer glitch and violated his probation.

I cannot say the circuit judge was clearly erroneous. For that reason I would affirm.

GLAZE and IMBER, JJ., join.