Cite as 2020 Ark. App. 285

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CR–19–976

| | | |
|---|---|---|
| | | **OPINION DELIVERED: MAY 6, 2020** |
| BRENT LAWRENCE | APPELLANT | APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, SOUTHERN DISTRICT [NO. 42BCR-16-112] |
| V. | | HONORABLE JERRY D. RAMEY, JUDGE |
| STATE OF ARKANSAS | APPELLEE | REVERSED AND DISMISSED |

## ROBERT J. GLADWIN, Judge

Brent Lawrence appeals the Logan County Circuit Court's order revoking his suspended imposition of sentence (SIS) and sentencing him to seventy-two months' confinement in the Arkansas Department of Correction (ADC). He argues that the circuit court erred in (1) revoking his SIS because the State failed to present sufficient evidence that he willfully violated the terms and conditions of his SIS regarding his payment of court-ordered fees, costs, and restitution; (2) finding he violated the terms of his SIS by not submitting himself to community service; and (3) allowing the State to admit the terms and conditions of his SIS because the conditions listed were terms of probation prohibited by state law and violated his right to due process and Arkansas law because they were not explicit. We find merit in Lawrence's first argument on appeal, and we reverse and dismiss.

## I. *Facts and Procedural History*

On April 17, 2017, Lawrence pleaded guilty in the Logan County Circuit Court to one count of residential burglary in case number 42BCR-2016-112. The circuit court sentenced him to seventy-two months in the ADC with an additional seventy-two-month SIS that, following his release from prison, was conditioned on his abiding by written rules of conduct, paying court costs and administrative fees, and making restitution to the victims. He was released on November 21, 2017, and was to begin his payments sixty days after his release.

On January 7, 2019, the State filed a petition to revoke Lawrence's SIS, alleging that he had failed to comply with its terms and conditions. The petition was subsequently amended on March 15 and again on June 27, citing as violations:

a.     The Defendant as of March 1, 2019 has failed to pay the following fees:[1]

　　l. Court Cost $150.00　　(Condition 16)

　　2. Restitution $3,760.00　(Part of Condition 15)

　　3. DNA Fee $250.00　　(Part of Condition 15)

b.     The Defendant as of April 19, 2019 is $344.00 delinquent in Supervision fees.

c.     The Defendant on or about November 08, 2018 failed to report as directed.

d.     The Defendant Failed to Appear on or about the following days:

　　1. April 1, 2019

　　2. June 7, 2019

e.     The Defendants whereabouts are currently unknown.

---

[1]Condition 17 states that fines, costs, and restitution shall be paid $60 per month beginning sixty days after release with subsequent payments due on the first of each month thereafter.

The allegation common to all three petitions was that Lawrence had inexcusably failed to pay the fines, costs, fees, or restitution associated with his SIS.

A hearing on the revocation petition was held on October 4. The State called Elaine Robertson, the Logan County circuit clerk, who authenticated the sentencing order related to the residential-burglary conviction and conditions of SIS that included the payment of fines, costs, administrative fees, and restitution, which were acknowledged by Lawrence when he entered his guilty plea.

The sentencing order was admitted into evidence without objection. The State attempted to admit the conditions of SIS, but Lawrence objected, stating they were improper under state law because they required him to submit to supervision, were in violation of his right to due process, and were in violation of Arkansas law. Lawrence argued that the State failed to provide clear, concise, and under the law, conditions that he could understand. The State responded that Lawrence had been represented by counsel and that he had signed a document stating that he would abide by those conditions. Lawrence's objection was overruled.

Leanna Jones, a deputy circuit clerk in charge of maintaining the records of payments in felony cases, testified that the records indicated Lawrence had made no payments toward the fees and restitution associated with his SIS since his release from prison on November 21, 2017. A third witness was called—Shelby Kiersey, one of Lawrence's burglary victims (married to Lawrence's great uncle)—who, over Lawrence's objection, testified that she had not received any restitution following Lawrence's release.

At the close of the State's case, defense counsel moved to dismiss the petition, arguing that the conditions of the SIS signed by Lawrence were illegal and unconstitutional in that he did not know which of the enumerated conditions applied to him. The State responded that Lawrence was represented be a licensed attorney who was capable of explaining those conditions and that the testimony before the circuit court constituted prima facia evidence that Lawrence had violated conditions of his SIS that have nothing to do with supervision. The motion was denied, and rather than specifically challenging the sufficiency of the evidence, Lawrence presented additional evidence.

Lawrence's medical provider, nurse practitioner Billy Noel, testified that Lawrence has uncontrolled type 1 diabetes, hepatitis C, MRSA, congestive heart failure, and COPD and that his appearance was skeletal due to the wasting effects of the uncontrolled diabetes. Noel testified that he had not seen Lawrence on drugs or incapacitated in any way at his clinic visits. Further, Noel stated that he did not believe Lawrence would be capable of getting and maintaining a job because of his health problems—stating that he is in very poor health and limited in his life expectancy. He also testified that he had needed to provide free treatment to Lawrence on several occasions.

Lawrence testified about his physical infirmities, living conditions, inability to work, attempts to borrow money, being destitute, and lack of willfulness in his inability to pay the court-ordered fines, costs, fees, and restitution. He asserted that he wanted to pay his obligations but that he did not even have twenty dollars he could have paid to bond out.

The State asked Lawrence if he had ever tried to ask for community service, and he responded that community service did not qualify for restitution. The State then asked if he

could have done community service, and he responded that he could do "very little, limited" but that he could have tried.

At the conclusion of the hearing, the circuit court noted that Lawrence had not only paid nothing toward his fees and restitution, he had made no attempt to do so. The circuit court found that Lawrence's failure to pay these costs was an inexcusable violation of conditions 15, 16, and 17 of the written conditions of SIS provided to him, stating:

> All right. Mr. Lawrence, here's the Court's position. I've listened to the case; I've looked at the exhibits. And I understand the arguments. But there is one thing that really caught my attention. During the cross examination, you were asked, "could you have done community service?" And your answer was, "yes, I could have, I just didn't." And then there was another question about the time frames on the payments. And there was no action at all. I mean, I hear these a lot. And the one thing I'm always looking for is somebody to try. Ten dollars a month, five dollars a month, community service, do something. And the problem is you've done nothing.

> Even though you have got medical conditions, I understand that. Diabetes is pretty prevalent issue in today's society. That's not an issue one way or the other, but the fact is you didn't do anything. And based on that I'm going to find that the State has met its burden. I'm going to find that you inexcusably violated Conditions 15, 16, and 17 of the Conditions of [SIS], which are payment of fines, costs, fees, restitution. And I am going to find you guilty on that. I will sentence you to 72 months in the [ADC], with credit for 70 days that you spent incarcerated pending adjudication of this matter. You will have the underlying fines, costs, fees, and restitution that you had when you were initially sentenced. And you will make your payments at the rate of $50.00 per month, plus the $10.00 monthly admin fee to begin within 60 days of your release from [ADC].

The circuit court found Lawrence guilty based on his violation of conditions 15, 16, and 17, and sentenced him to seventy-two months' confinement in the ADC. The sentencing order was filed of record on October 4, and a timely notice of appeal was filed of record on October 9.

## II. *Standard of Review and Applicable Law*

We recently reiterated our standard of review in revocation cases:

A circuit court may revoke a defendant's probation if it finds by a preponderance of the evidence that the defendant has violated a condition of the probation. The State bears the burden of proof, but it need only prove that the defendant committed one violation of the conditions. Evidence that is insufficient to support a criminal conviction may be sufficient to support a revocation of probation. On appeal, we will defer to the circuit court's superior position in evaluating the credibility and weight of testimony presented at the hearing. A circuit court's finding in revocation proceedings will not be reversed on appeal unless it is clearly against the preponderance of the evidence.

*Ruffin v. State*, 2020 Ark. App. 179, at 5–6, 597 S.W.3d 151, 154–55 (internal citations omitted).

A challenge to the sufficiency of the evidence at a hearing seeking to revoke a defendant's SIS may be raised for the first time in an appeal of a revocation in the absence of a motion to dismiss. *See, e.g.*, *Barbee v. State*, 346 Ark. 185, 188, 56 S.W.3d 370, 372 (2001).

Specifically, with respect to revocations based on failure to pay, we recently held:

When the alleged violation involves the failure to pay court-ordered restitution, after the State has introduced evidence of nonpayment, the burden shifts to the defendant to provide a reasonable excuse for his or her failure to pay. [*Bohannon v. State*, 2014 Ark. App. 434, 439 S.W.3d 735]. It is the defendant's obligation to justify his or her failure to pay, and this shifting of the burden of production provides an opportunity to explain the reasons for nonpayment. *Id.* If he or she asserts an inability to pay, then the State must demonstrate that the probationer did not make a good-faith effort to pay. *Williams v. State*, 2019 Ark. App. 437, at 3, 586 S.W.3d 208. Ultimately, the State has the burden of proving that the defendant's failure to pay was inexcusable. *Id.*

Arkansas Code Annotated section 5-4-205(f)(3) provides that in determining whether to revoke based on failure to pay, the court must consider the defendant's employment status, earning ability, financial resources, the willfulness of the failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay. Ark. Code Ann. § 5-4-205(f)(3)(A)–(E) (Supp. 2017). While the statute governing revocations requires the circuit court's consideration of certain factors in determining whether a party's inability to pay is inexcusable, the statute does not require explicit findings of fact on those factors. *Springs v. State*, 2017 Ark. App. 364, at 5, 525 S.W.3d 490, 493. In *Hanna v. State*, 2009 Ark. App. 809, at 6, 372 S.W.3d 375, 379, we explained that the State can carry its burden of proving

6

willful nonpayment in several ways: (1) by undermining the probationer's credibility; (2) by showing the probationer's lack of effort; (3) by showing that a probationer failed to make a bona fide effort to seek employment or borrow money; or (4) by showing that the probationer is spending money on something nonessential or illegal instead of paying restitution. *See also Williams*, *supra*; *Joseph v. State*, 2019 Ark. App. 276, at 5, 577 S.W.3d 55, 59.

*Young v. State*, 2019 Ark. App. 580, at 5–6, 591 S.W.3d 385, 388–89.

### III. *Discussion*

### A. Sufficiency of the Evidence Supporting Revocation

Lawrence was alleged to have not made a payment in accordance with his SIS conditions document; an allegation that he does not dispute. Lawrence does not dispute that he failed to pay as ordered. It is also undisputed that Lawrence presented significant evidence in support of his reasonable excuse for nonpayment. The issue on appeal is whether the State refuted Lawrence's evidence of his good-faith inability to pay. Arkansas Code Annotated section 5-4-205(f)(2) (Supp. 2019) states that the court may revoke if the defendant has not made a good-faith effort to comply with the order. In determining whether to revoke any form of conditional release for a failure to pay restitution, the court "shall consider" the defendant's employment status, earning ability, financial resources, the willfulness of the failure to pay, and any other special circumstances that may have bearing on the defendant's ability to pay. Ark. Code. Ann. § 5-4-205(f)(3)(A)–(E); *see also Young*, *supra*; *Hanna*, *supra*. This court has held that this "inquiry reflects the delicate balance between the acceptability and indeed the wisdom, of considering all relevant factors when determining an appropriate sentence for an individual and the impermissibility of imprisoning a defendant solely because of his lack of financial resources." *Hanna*, 2009 Ark. App. 809, at 4, 372 S.W.3d at 378.

Lawrence addressed the above-referenced factors in *Hanna* through his testimony and that of his medical provider. Lawrence produced evidence of his inability to work based on his uncontrollable diabetes and MRSA/staph infection, including undergoing surgery for MRSA in April 2018. He explained that he had applied at the local chicken plant and was turned down for work because of his criminal charges and for being sick and not able to work. Lawrence testified that he underwent hernia surgery—for one large and five small ones—which resulted in forty-one clips being placed in his stomach in September 2018. He explained that the surgery has affected his ability to work in that he is not allowed to lift anything. Lawrence testified that his uncontrolled diabetes has damaged his hands and feet to such an extent that he can no longer feel them.

Lawrence testified that he has no home and that he had lived with his parents upon release from prison until they lost their home. He detailed how, after his parents lost their home, they were homeless—living under a bridge, eating from a dumpster, with no way to get to court. Lawrence explained that he had made efforts to borrow the money from his parents and his aunt. Lawrence testified that he did not have the twenty dollars he needed to bond out after his arrest and that during the seventy-four days he had been in jail, he had not even had a dollar for commissary.

Lawrence's medical provider, Noel, testified regarding Lawrence's multiple serious health issues. Noel noted that he had not seen Lawrence under the influence of drugs or incapacitated in any way during his clinic visits. Further, Noel testified that he did not believe Lawrence would be capable of getting and maintaining a job because of his health problems. He also explained that he had to provide free treatment to Lawrence on several occasions because of his lack of financial resources.

The State's efforts to satisfy the *Hanna* requirement to undermine or diminish Lawrence's credibility through cross-examination consisted primarily of questioning as to why he did not perform community service, which was not an obligation of the conditions of his SIS. In *Hanna*, 2009 Ark. App. 809, at 6, 372 S.W.3d at 379, we listed the ways in which the State can meet its burden of production. The State can attempt to undermine the probationer's credibility, which is a matter for the circuit court to assess. Here, the circuit court made no indication that either Lawrence or Noel lacked credibility. The State can also meet its burden by showing that Lawrence failed to make bona fide efforts to seek employment or to borrow money. But here, Lawrence presented undisputed evidence that he did make bona fide efforts to seek employment, which were unavailing because of his health issues, and to borrow money—from relatives who were themselves destitute. The State can also meet its burden by showing that Lawrence has been spending his money on something illegal or nonessential instead of paying restitution. Here, not only did the State fail to do so, but Lawrence specifically testified that he had no money for lodging, food, bond, or even commissary while in jail. Noel likewise refuted a suggestion that Lawrence spent money on drugs, testifying that he saw no indication of drug use during his treatment of Lawrence.

Lawrence notes that the actual definition of "inexcusable" adopted by this court in *Springs v. State*, 2017 Ark. App. 364, at 4, 525 S.W.3d 490, 493, is "incapable of being excused or justified—Syn. unpardonable, unforgiveable, intolerable." Lawrence argues that the circuit court clearly found against the preponderance of the evidence in finding his failure to pay was inexcusable. We agree; accordingly, we hold that the circuit court

committed reversible error because the State failed to meet its burden to prove Lawrence's willful and inexcusable failure to pay.

Just as in *Hanna*, *supra*, the State offered no evidence of Lawrence's other sources of income, assets, or expenses because there were none. It is undisputed that Lawrence was homeless, seriously ill, and eating out of dumpsters. Therefore, similar to *Hanna*, the defect is in the proof itself, not only in the findings on the proof. The failure of the State's proof requires that this court reverse the revocation order and dismiss the petition. *See Hanna*, 2009 Ark. App. 809, at 9, 372 S.W.3d at 381 (citing *Wilcox v. State*, 99 Ark. App. 220, 222, 258 S.W.3d 785, 787 (2007)).

Although Lawrence also argues that the circuit court erred when it relied on his lack of community service as a basis for the revocation, we note that the circuit court *did not* base the revocation on his failure to do community service. Finally, because we are reversing and dismissing the revocation, we need not address Lawrence's argument that the terms and conditions of his SIS were confusing, unconstitutional, and violative of Arkansas law because they did not explicitly state what conditions Lawrence had to abide by to stay out of prison. We do point out that Lawrence was represented by counsel, and he and his counsel signed and acknowledged the conditions and sentencing order. Moreover, his testimony during the revocation hearing indicates that he understood the nuances of his sentence.

Reversed and dismissed.

WHITEAKER and BROWN, JJ., agree.

*Beth Wright*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.