Cite as 2024 Ark. App. 30

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-23-254

| | | |
|---|---|---|
| ROCKY MCGAHEY | | **Opinion Delivered** January 17, 2024 |
| | APPELLANT | APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, NORTHERN DISTRICT |
| V. | | [NO. 42PCR-18-102] |
| STATE OF ARKANSAS | | HONORABLE JERRY RAMEY, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Rocky McGahey appeals after the Logan County Circuit Court revoked his probation on one count of first-degree terroristic threatening and sentenced him to serve sixty months' imprisonment with a judicial transfer to the Arkansas Division of Community Correction Center. Appellant argues on appeal that the circuit court erred in revoking his probation because there was insufficient evidence that he inexcusably violated a condition of his probation. We affirm.

## I. *Relevant Facts*

On January 25, 2019, appellant entered a negotiated plea of guilty in relevant part to terroristic threatening in the first degree, a Class D felony, in violation of Arkansas Code Annotated section 5-13-301 (Supp. 2017). Appellant was placed on twenty-four months'

probation. According to the terms and conditions of his probation, appellant was ordered to pay a monthly $35 supervision fee, other fees totaling $285, $150 in court costs, and a $1,000 fine. He was to pay these fines, fees, and costs in monthly installments of "$50.00 + $10.00" beginning on March 1, 2019.

Appellant's probation was subsequently revoked on November 8, 2019, and appellant was sentenced to serve one hundred days in jail and placed on probation for thirty-six months. The sentencing order stated that all fines and costs that were previously ordered were still owed. It additionally held that appellant owed an additional $150 in court costs, $10 in monthly administration fees, a $50 warrant fee, and a $40 booking fee. The circuit court ordered that appellant start making $50 monthly installment payments within sixty days of his release. Those orders were included in the terms and conditions of appellant's probation in addition to ordering appellant to "report as directed to a supervising officer and permit him or her to visit you in your residence, place of employment, or other property."

On July 13, 2022, the State filed a petition to revoke appellant's probation, alleging that appellant violated the following terms and conditions:

> #6 - Reporting:
> On 4/25/2022, MaGahey failed to report for office visit as instructed.
> On 5/11/2022, MaGahey failed to report for office visit as instructed.
> On 5/13/2022, MaGahey failed to report for office visit as instructed.
> On 5/20/2022. MaGahey failed to report for office visit as instructed.
>
> #8 - Change of Address/Employment or Education:
> On 5/10/2021, MaGahey failed to obtain permission from supervising officer to move from approved residence. Offender's whereabouts is unknown.

As of 5/25/2022, MaGahey has failed to provide proof of Employment or Enrollment in an Educational Program.

# 10: Treatment:
As of 5/25/2022, MaGahey has failed to complete an assessment with SAPL.

# 14 - Financial Obligations:
As of 5/25/2022, MaGahey is $760 delinquent in supervision fees.
As of 5/25/2022, McGahey HAS NOT made a payment on his Logan County felony fines since March of 2021. $50. Leaving his past due balance at $1560.

Appellant was arrested on the violations on July 13, 2022, and a revocation hearing was held on January 13, 2023.

At the revocation hearing, Officer Jackie Young testified that he has been appellant's probation officer since April 2022. He explained that appellant was not current on his fees when appellant was assigned to his caseload and that appellant was still behind on his fees. As of that morning, appellant was delinquent $499. He also stated that appellant failed to report on several occasions. Officer Young explained that appellant had missed an office visit on April 25, 2022. He admitted that another officer had scheduled the appointment but explained that appellant was to report to him. After appellant failed to return two subsequent phone calls, Officer Young left a note at appellant's house directing him to report on May 11, 2022. However, appellant failed to report. Appellant thereafter sent Officer Young a text message on May 12, 2022, asking when he needed to report. Officer Young instructed him to report the next day, but appellant again failed to report on May 13, 2022. Appellant next called Officer Young on May 19, 2022, and Officer Young directed appellant

to report on May 20, 2022. However, Officer Young stated that appellant did not report until May 31, 2022.

Officer Young testified that in addition to being delinquent on his financial obligations and failing to report, appellant failed to complete "an assessment SAPL" that he was ordered to complete. Appellant also had failed to obtain permission from his previous probation officer before moving. Appellant further had not provided any proof of employment or education.

On cross-examination, Officer Young admitted that he did not have personal knowledge as to whether appellant received the directive to report on April 25, 2022, and that he did not know whether appellant had received the text messages. However, Officer Young explained that appellant had texted him from the same number that he sent the messages to. Officer Young also admitted that appellant had reported on several other occasions. Appellant's last office visit was on September 19, 2022; Officer Young stated that at that time, he stopped issuing any further directives to report after that date.

Angela Moore, a clerk at the Logan County Sheriff's Office, testified that appellant owed $1,665 and had only made some payments totaling $410. On cross-examination, Ms. Moore admitted that she did not know whether appellant had the ability to pay his financial obligations. She also admitted that she did not know whether appellant had any issues with being a veteran or any kind of disability that would interfere with his ability to pay.

After the State rested, appellant moved to dismiss the petition, which was denied.

Appellant testified that his phone had not been working for two months because he could not afford his bill and that the electricity at his home had also been shut off. He further testified he had served four years in the Marine Corps, suffers from PTSD, and has a degenerative disc in his lumbar spine. Appellant claimed that he makes only $300 a month. He also stated that because his driver's license had been suspended, it was difficult for him to go places. He admitted that although his driver's license had been suspended, he managed to visit the probation office on some occasions. Appellant explained that he would risk driving, and he felt he was "between a rock and a hard place." He stated that he "did the best [he] could." Appellant admitted that he knew he needed to pay his financial obligations but reiterated that he makes only $300 a month. Appellant claimed that he had texted Officer Young about his probation fees being waived because he has a disability and further claimed that Officer Young subsequently told him that he "was at a zero on [his] probation fees." Appellant testified that he was going to school for welding and that he was currently employed at Butterball. His neighbor had helped him get his job and had been giving him rides to work. His mom also would give him rides to court. Appellant acknowledged on cross-examination that he could have asked his neighbor for help earlier but stated that he was not "sober enough" like he was now. Appellant claimed that he could start making payments on his financial obligations and claimed that his father was willing to pay off those obligations.

Shelly McGahey, appellant's wife, testified that she and appellant had been married for seven years. She thought appellant was doing the best she had ever seen. She confirmed

that appellant was working, enrolled in college, and close to getting his driver's license back. She further testified that they were co-parenting even though they were not living together. Ms. McGahey admitted that she had driven appellant to see his probation officer in the past. However, she explained that she was unable to take him whenever he needed to go. She explained that although appellant could ask for rides, he often had problems with text messaging on his phone. She said that appellant would also run out of minutes to use on his phone at various times.

On cross-examination, Ms. McGahey admitted that appellant would either ask for rides or drive himself. She further admitted that appellant had been driving "a lot" on his suspended license but has stopped driving in the last year after he was pulled over for driving on a suspended license. She stated that she had not had constant contact with appellant in the past two years and that she did not know about his substance abuse. She further testified that appellant had gone with her to Celebrate Recovery every time in the past six months but had not been going before that time.

Defense counsel recalled Officer Young. Officer Young testified that he was aware that appellant's driver's license had been suspended and that appellant was having difficulty getting back and forth.

After the defense rested, the State then recalled Officer Young as a rebuttal witness. Officer Young testified that he did not tell appellant that his supervision fees were zeroed out as appellant claimed. He also stated that appellant had not stayed in regular contact with

6

him. He explained that appellant would text him approximately once a month and that when appellant contacted him, it was through text.

On cross-examination, Officer Young stated he had seen appellant six times. When asked whether that was reasonable for someone who does not have a driver's license, Officer Young responded that he had "people find rides all the time."

At the conclusion of closing arguments, the circuit court found that appellant was "not current on payments, fees, and costs, in violation of Paragraph 15 and 16." It also found that he had "failed to report to his supervising officer in violation of Paragraphs number six." It further concluded that the State had met its burden and specifically found that appellant had "inexcusably violated the conditions of [his] probation."

Thereafter, the circuit court filed a written sentencing order and an amended sentencing order, sentencing appellant to serve sixty months' imprisonment with a judicial transfer to the Arkansas Division of Community Correction Center.[1] This appeal followed.

II. *Analysis*

A challenge to the sufficiency of the evidence may be raised for the first time in an appeal of a revocation in the absence of a motion for a directed verdict or motion to dismiss. *See Barbee v. State*, 346 Ark. 185, 56 S.W.3d 370 (2001). In a revocation proceeding, the circuit court must find by a preponderance of the evidence that the defendant has

---

[1]Although appellant's probation was revoked after the expiration of the probationary period, his revocation was authorized because appellant was arrested for the violation before the probation expired. *See* Ark. Code Ann. § 16-93-308(f)(1); *Kennedy v. State*, 2021 Ark. App. 413, 635 S.W.3d 524.

inexcusably failed to comply with a condition of his or her suspension or probation, and on appellate review, we do not reverse the circuit court's decision unless it is clearly against the preponderance of the evidence. *Flemons v. State*, 2014 Ark. App. 131; Ark. Code Ann. § 16-93-308(d) (Supp. 2021). Because the burdens are different, evidence that is insufficient for a criminal conviction may be sufficient for a probation or suspended-sentence revocation. *Bradley v. State*, 347 Ark. 518, 65 S.W.3d 874 (2002). Since a determination of a preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the circuit court's superior position. *Id.* Furthermore, the State need only prove that the appellant committed one violation of the conditions in order to revoke appellant's sentence. *Peals v. State*, 2015 Ark. App. 1, 453 S.W.3d 151.

Appellant argues that the circuit court erred in finding that he inexcusably failed to comply with a condition of his probation. Appellant acknowledges in his brief that the circuit court found that "the Appellant had inexcusably failed to report to his supervising officer" in violation of the terms and conditions of his probation. Although appellant concedes that "the State proved that Mr. McGahey missed two office visits, the May 13 visit and the May 20 visit," he argues that the State had failed to show that missing those "two appointments were inexcusable." However, the State need only present evidence of noncompliance. *Stewart v. State*, 2018 Ark. App. 306, 550 S.W.3d 916. It is then the defendant's burden to present a reasonable excuse for this noncompliance, and it is within the circuit court's discretion to either accept or reject any of the excuses for his or her

8

noncompliance. *Id.*; *see also Scruggs v. State*, 2023 Ark. App. 343; *Honeycutt v. State*, 2020 Ark. App. 449, 608 S.W.3d 631.

Here, the State presented evidence—and appellant concedes—that he failed to report as directed to his probation officer. Appellant nevertheless argues that his failure to report was excusable because his driver's license had been suspended, a fact of which the probation officer was aware. Appellant explains that he was either dependent on rides or would "just risk" driving on other occasions. Therefore, he argues, because he reported "a mere 11 days after he missed his previous visits," the circuit court erred in finding that his failure to report was inexcusable. We disagree and have previously rejected similar arguments. *See Scruggs, supra* (affirming revocation for failure to report as directed despite the defendant's testimony that he had difficulty in meeting the reporting requirements because he has a suspended license, his mother had surgery, and he was scatterbrained); *see also Stinnett v. State*, 63 Ark. App. 72, 973 S.W.2d 826 (1998) (affirming revocation for failure to report as directed despite the defendant's testimony that he was having car trouble, going through a divorce, working, and having problems with drugs).

Officer Young testified that he had several people on probation that had to obtain rides in order to report. Further, appellant acknowledged that he had previously received rides to places that he needed to go from his mother, his wife, and his neighbor. In light of these facts and our standard of review, sufficient evidence supports the circuit court's finding that appellant inexcusably failed to report as directed to his probation officer. Because the State is required to prove only one violation of the terms and conditions of appellant's

probation in order to support a revocation of that probation, it is unnecessary for us to consider appellant's arguments regarding the circuit court's finding that he inexcusably violated other terms and conditions of his probation. *Sanders v. State*, 2010 Ark. App. 563. Accordingly, we affirm appellant's revocation.

Although not listed as a separate point on appeal, appellant discusses his sentence in the last two paragraphs of his appellate brief. Appellant first argues that his sentence was "extremely harsh." He claims that "a five-year prison sentence for a disabled American veteran for missing two office visits and being behind on fines 'shocks the moral sense of the community.'" He does not allege, however, that his sentence is illegal. The State argues that because appellant failed to object and make this argument below when he was sentenced, it is not preserved for appeal. *See Break v. State*, 2022 Ark. 219, 655 S.W.3d 303; *Shinn v. State*, 2022 Ark. App. 10; *Welborn v. State*, 2021 Ark. App. 383. Regardless, his argument lacks merit.

Sentencing in Arkansas is entirely a matter of statute, and no sentence shall be imposed other than as prescribed by statute. *Lenard v. State*, 2014 Ark. 478, 522 S.W.3d 118. When the sentence given is within the maximum prescribed by law, the sentence is not illegal because the court has the authority to impose it. *Richie v. State*, 2009 Ark. 602, 357 S.W.3d 909. This court has held that the circuit court has discretion to set punishment within the statutory range of punishment provided for a particular crime. *Whitmore v. State*, 2018 Ark. App. 44, 539 S.W.3d 596. Moreover, our supreme court has held that it will not reduce a sentence, even if it considers it unduly harsh, if it falls within the legislative limits

set by the General Assembly. *Brown v. State*, 2010 Ark. 420, 378 S.W.3d 66. If a sentence is within the limits set by the legislature, the appellate court is not at liberty to reduce it. *Williams v. State*, 320 Ark. 498, 898 S.W.2d 38 (1995).

It is apparent from the record that the judgment and sentence entered against appellant is lawful. When the circuit court revokes a defendant's probation, it may enter a judgment of conviction and may impose any sentence on the defendant that might have been imposed originally for the offense of which he or she was found guilty. Ark. Code Ann. § 16-93-308(g)(1)(A). Appellant's probation was revoked on the underlying charge of terroristic threatening in the first degree, a Class D felony, in violation of Arkansas Code Annotated section 5-13-301. A Class D felony carries a sentencing range of not more than six years' imprisonment. Ark. Code Ann. § 5-4-401(a)(5) (Repl. 2013). Thus, because appellant's sentence imposed by the circuit court was within the statutory range prescribed by law, we affirm. *See Brookshire v. State*, 2021 Ark. App. 315, 633 S.W.3d 782; *Clark v. State*, 2019 Ark. App. 362, 584 S.W.3d 680.

Last, appellant states the following in his appellate brief:

> It should also be noted that while the court sentenced Mr. McGahey to five years in ADC with a Judicial Transfer reasoning there would be beneficial programs available to Mr. McGahey in the Regional Punishment Facility[2]; Mr. McGahey is not eligible for RPF due to the revocation being on the charge of Terroristic Threatening. Therefore, Mr. McGahey will serve his sentence in the Arkansas Department of Corrections.

---

[2]We note that appellant and the circuit court refer to the Community Correction Center by variations of its former name—Regional Punishment Facility or Regional Correction Facility. However, the name was changed by the General Assembly in 2005. *See* Act 1994 of 2005, § 287.

Appellant fails to adequately present any argument for our review; nor does appellant request any relief based on his claim that he is not eligible for a judicial transfer. Because it is a well-settled principle of appellate law that we will not make a party's argument for him or her, we must affirm appellant's sentence. *Thigpen v. City of El Dorado*, 2020 Ark. App. 531. Moreover, as the State correctly notes, appellant's sentence of sixty months' imprisonment with a judicial transfer to the Arkansas Division of Community Correction Center was "subject to eligibility determination by the Division of Community Correction." Ark. Code Ann. § 16-93-1202(13) (Supp. 2019).

Affirmed.

HARRISON, C.J., and GLADWIN, J., agree.

*Beth Wright*, Public Defender, for appellant.

*Tim Griffin*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.