Cite as 2025 Ark. App. 536

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-24-752

| | | |
|---|---|---|
| MARK BICKHAM | | Opinion Delivered November 5, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE POPE COUNTY CIRCUIT COURT |
| V. | | [NO. 58CR-23-16] |
| STATE OF ARKANSAS | | HONORABLE JAMES DUNHAM, |
| | APPELLEE | JUDGE |
| | | AFFIRMED; REMANDED TO CORRECT THE SENTENCING ORDER |

**WENDY SCHOLTENS WOOD, Judge**

Mark Bickham appeals the Pope County Circuit Court sentencing order convicting him of six offenses: simultaneous possession of drugs and firearms (Class Y felony), possession of firearms by certain persons (Class B felony), possession of a controlled substance (Class D felony), terroristic threatening (Class D felony), and two counts of harassment (Class A misdemeanors). He was sentenced as a habitual offender[1] to serve a total of fifty-five years' imprisonment and pay $40,000 in fines. For his sole point on appeal, Bickham contends that the circuit court failed to "honor" an agreement between him and the prosecutor in which Bickham agreed not to seek severance of the possession-of-firearms-

---

[1]The State alleged that Bickham is a habitual offender under Arkansas Code Annotated section 5-4-501 (Supp. 2025), having been previously convicted of five felonies.

by-certain-persons ("felon-in-possession") charge in exchange for the prosecutor agreeing not to request that a consecutive-sentence instruction[2] be given to the jury. We affirm the convictions but remand to correct a clerical error in the sentencing order.

A two-day jury trial took place in April 2024. On December 10, 2022, Bickham and his girlfriend drove from their home in Louisiana to Arkansas. They traveled to the home of Bickham's brother Philip in Hector to retrieve a pair of work boots that Bickham had left with Philip. Bickham was unable to find the boots and left. Bickham later called Philip "in a fit of rage" and said he was on his way back to Philip's house to kill him and his family. Philip called the police and reported Bickham's threats.

Bickham and his girlfriend then drove to Russellville looking for his nephew Bryce. On the way, Bickham stopped Dalton Byrum, who was walking his dogs, to ask Byrum if he knew where Bryce lived. During the encounter, Bickham thought he recognized Byrum as a man who had tried to "run him over on a motorcycle or something" the previous week in Louisiana. Bickham became "real angry," and Byrum ran away in fear. Bickham chased

---

[2]Throughout the record and in the briefs, the parties state that the prosecutor's part of the agreement was to not request a consecutive-sentence jury instruction. It appears that the parties are referring to Arkansas Model Jury Instruction-Criminal 2d 9112. This instruction provides that when a defendant has been convicted of more than one felony, the jury may make a recommendation that any two or more terms of imprisonment be consecutive. AMI Crim. 2d 9112. The instruction also advises the jurors that the recommendation will not be binding on the court. *Id.*

Byrum in Bickham's vehicle and on foot. Byrum ran to a police officer's nearby home for help.

While chasing Byrum on foot, Bickham encountered and stopped Cody Hull, who was riding his scooter to work. Bickham thought he also recognized Hull as someone who had tried to harm him in Louisiana. Bickham told Hull to wait while he went to retrieve handcuffs from his vehicle, in which Bickham's girlfriend had just "pulled" up. Believing that Bickham was on "some sort of drugs," a scared Hull called 911 and continued on his scooter to a police officer's nearby home.

Officer Scotty Manning of the Russellville Police Department responded to the call and questioned Bickham. Bickham provided the officer with several "jumbled" stories of what had occurred but admitted that he had confronted both Bynum and Hull. Bickham also admitted that he had used methamphetamine six days earlier and that he had a firearm, handcuffs, and marijuana in the vehicle. Officer Manning concluded that Bickham was high on methamphetamine. A search of the vehicle led to the discovery of methamphetamine, marijuana, a firearm, and handcuffs, all of which Bickham admitted belonged to him. Bickham was arrested.

The jury found Bickham guilty on all charges. During a discussion of the sentencing instructions, the prosecutor informed the circuit court that he did not request a consecutive-sentence instruction, explaining "that was done based on the joinder of the offenses [by Bickham's agreement], and so the State, as a concession, did not request a consecutive instruction[.]" The parties proceeded to arguments during the sentencing phase.

During the State's rebuttal sentencing argument, the prosecutor stated to the jury: "In terms of sentences, whatever they are, just know that there're going to be running what we call concurrent – all at the same time, okay?" This statement prompted the circuit court to call a bench conference after the State concluded its rebuttal argument. The court stated that it did not understand why the State told the jury that the sentences would run concurrently because whether the sentences run concurrently or consecutively is a discretionary matter for the court.[3] The court indicated that it would correct the misstatement for the jury.

Defense counsel then stated that "[t]here was an agreement that we would not ask to sever, and they would not ask for a concurrent ~ or for consecutive[.]" The court stated that it did not want the jury to have

> a misunderstanding of the law applicable to multiple sentences. The law on that is that it's discretionary with the sentencing Court. You-all may have some separate thing going on that I ~ that hasn't, you know, gotten some sort of Court blessing – I'll work through that in a minute ~ but I do ~ I'm inclined to tell the jury that, in regards to the manner in which the sentences are served that is the discretion of the Court and they're not going to be issuing that sentence that is based upon that; is that acceptable to the parties?

Both sides agreed.

---

[3]Arkansas Code Annotated section 5-4-403(a) (Repl. 2024) provides that "when multiple sentences of imprisonment are imposed on a defendant convicted of more than one (1) offense, including an offense for which a previous suspension or probation has been revoked, the sentences shall run concurrently unless, upon recommendation of the jury or the court's own motion, the court orders the sentences to run consecutively." The decision to impose consecutive or concurrent sentences lies solely within the province of the circuit court. *Maldonado v. State*, 2009 Ark. 432, at 3.

Before sending the jurors to consider the sentencing verdicts, the circuit court told them that a misstatement had been made during closing arguments. The court explained that whether the sentences would run concurrently or consecutively was not one of the questions the parties were asking the jurors to determine—how the sentences would be served would be determined by the court.

After the court excused the jury to deliberate, the prosecutor informed the court that the parties had an "understanding" that the State would not request a consecutive-sentencing instruction if Bickham did not seek severance of the felon-in-possession charge. The circuit court stated that it had not been made aware of the agreement before trial, and a discussion ensued about when the agreement was made, which was some time after the pretrial hearing but before the trial.

The jury returned the sentencing verdicts. While the circuit court read the verdicts and polled the jury, Bickham interrupted and made derogatory comments to the jury and the court. The court discharged the jury and asked the State whether it wanted to be heard on whether the sentences would be imposed concurrently or consecutively; the prosecutor stated that "[i]n terms of a consecutive, I think [Bickham's] outbursts . . . and the way that he treated ~ the jury just now . . . [are] relevant to the Court's decision[.]" Bickham's outbursts continued. The court stated it was not inclined to consider Bickham's outbursts in connection with its sentencing decision but stated what was relevant to its determination is that the terroristic-threatening charge was fundamentally different from the other charges

because it involved an offense against a family member. The court also considered the agreement of the parties:

THE COURT: Sort of also in the mix is whether or not any agreements of the parties should be taken into consideration. The parties, it seemed to me, had a ~ you know, a separate agreement that was apart from the Court, and the court process and ~ and the State seems to have performed their part of the agreement by ~

BICKHAM: I wish he'd just ~

THE COURT: ~ not requesting a ~

BICKHAM: ~ hurry up and give me my time and put me in jail ~

THE COURT: ~ a ~

[DEFENSE COUNSEL]: An instruction.

THE COURT: ~ instructions regarding whether or not the jury would recommend consecutive or ~ or concurrent sentences. And so it seems to me that that's really not a part of whether or not the Court orders consecutive or concurrent. So that's sort of the way I see these questions. Do you see them the same or differently?

[DEFENSE COUNSEL]: I see the same questions, Judge. I ~ and ~ and if I may address those.

THE COURT: Yes, of course.

[DEFENSE COUNSEL]: Thank you.

THE COURT: I just wanted to sort of create the framework so that I could track your ~ your information. Go ahead.

[DEFENSE COUNSEL]: With regards to the ~ the last issue ~ the question that you brought up regarding the agreement ~ there was an agreement, Judge, and it was ~ we ~ you know, we did not

6

move to sever. And I understand that was so that ~ that the ~ the prosecutors' agreement was to not ask for ~ or submit a consecutive instruction. And so I understand the nuances involved with the Courts and how that ~ certainly that can't bind the Court; I would just ask the Court to consider that and ~ and honor that. One reason for that, I think ~ and this will get to the rest of those ~ is that Count Two is a 100 percent sentence ~

THE COURT: Right.

[DEFENSE COUNSEL]: ~ and so there would be 30 –

BICKHAM: 30 f[***]in' years.

[DEFENSE COUNSEL]: ~ there will be 30 years served regardless of ~ of anything. There will be at least 30 years served. Regardless of how parole goes with Count One, there would still be 10 years of supervision, whether that's in ADC or not, if these are run concurrently. Because if he ~ if he does 30 years and gets out, there's still 10 years left on that sentence.

BICKHAM: I'm not going to get out; I'm ~

[DEFENSE COUNSEL]: So as far as supervision goes, I think that that's ~ that's addressed with that, if those were to run concurrently. The ~ and ~ and 30 years to do 100 percent is a significant amount of time ~

BICKHAM: Too much for somebody ~

[DEFENSE COUNSEL]: ~ that's 2054 ~

BICKHAM: ~ f[***]ing bullsh[**]t.

[DEFENSE COUNSEL]: ~ to give some perspective on that, which is a good distance away. And so I would ask the Court to consider those and to refrain from making a ~ these consecutive and ~ and ~

THE COURT: Okay.

7

[DEFENSE COUNSEL]:          Thank you.

THE COURT:                  Yes. No, I appreciate that. That ~ that perspective is helpful to me.

The circuit court sentenced Bickham to forty years' imprisonment for the simultaneous-possession-of-drugs-and-firearms conviction, thirty years' imprisonment and a $15,000 fine for the felon-in-possession conviction, ten years' imprisonment and a $10,000 fine for the possession-of-a-controlled-substance conviction, fifteen years' imprisonment and a $10,000 fine for the terroristic-threatening conviction, and twelve months in the county jail and a $2,500 fine for each of the harassment convictions. The court then ordered the sentences for simultaneous possession of drugs and firearms, felon in possession, and possession of controlled substance to run concurrently and the sentence for the terroristic-threatening conviction to run consecutively to the other felony sentences. This appeal followed.

Bickham contends that the circuit court failed to "honor" Bickham's agreement with the prosecutor, arguing that the prosecutor breached the agreement, Bickham detrimentally relied on the agreement, and severance waivers are "enforceable deals." Bickham does not articulate on appeal how the circuit court's explicit statutory discretion to impose consecutive or concurrent sentences, as set forth in Arkansas Code Annotated section 5-4-403(a), could in any way be bound by a purported agreement between Bickham and the prosecutor.[4] We

---

[4]Notably, when explaining his understanding of the parties' agreement to the circuit court, defense counsel conceded that the agreement "certainly . . . can't bind the Court."

8

have made it exceedingly clear that we will not consider an argument when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Hopper v. State*, 2025 Ark. App. 275, at 17, 712 S.W.3d 782, 792.

Assuming arguendo that the circuit court could be bound by the parties' agreement in this case, any argument that the court erred in ordering that the terroristic-threatening sentence run consecutively to the other felony sentences is not preserved because Bickham failed to raise it below. It is well settled that only the specific objections and requests made at trial will be considered on appeal. *Lucas v. Jones*, 2012 Ark. 365, at 9, 423 S.W.3d 580, 585. Arguments not raised below, even constitutional ones, are waived, and parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of the objections and arguments presented at trial. *Thomas v. State*, 2016 Ark. App. 195, at 8, 487 S.W.3d 415, 420.

Here, both parties had the same understanding of their agreement—Bickham agreed not to file a motion to sever the felon-in-possession charge, and the prosecutor agreed not to request a jury instruction on consecutive sentencing. Although Bickham argues that the prosecutor violated the agreement by mentioning "consecutive" sentencing in closing argument, the transcript reveals that the prosecutor told the jury that the sentences were "going to be running what we call concurrent – all at the same time, okay?" Moreover, defense counsel did not object when the circuit court informed the parties at a bench

conference that the court—not the parties or the jury—would determine how the sentences were to be served.

After the jury returned the sentences, the circuit court again brought up the agreement between the parties and asked for argument from the parties on how the sentences would be imposed. The prosecutor argued that Bickham's outbursts and behavior to the jury were relevant in the determination. Defense counsel did not object. When the circuit court concluded that the prosecutor "seemed to have performed their part of the agreement" because he did not request the consecutive-sentence instruction and that the agreement is "really not a part of whether or not the Court orders consecutive or concurrent [sentences]," not only did defense counsel not object, but he also affirmatively stated that he saw the "questions" the same way the circuit court did. Instead of lodging an objection, defense counsel noted that a felon-in-possession conviction is a "100 percent sentence" for which Bickham would serve thirty years and asked the court to consider that fact in determining whether to impose a consecutive sentence.

Finally, when the circuit court first pronounced that the sentences for simultaneous possession of drugs and firearms, felon in possession, and possession of methamphetamine would be served concurrently and would be run consecutively to the terroristic-threatening sentence, defense counsel made no objection. And later, upon clarification by the prosecutor, defense counsel again made no objection when the court restated its order that the terroristic-threatening sentence would be served first, followed by the remaining

10

concurrent felony sentences. For these reasons, we hold that Bickham's arguments on appeal are not preserved for review.

Recognizing his failure to preserve, Bickham suggests that our appellate courts have applied a *Wicks* exception to review errors affecting substantial rights in sentencing. In *Wicks v. State*, 270 Ark. 781, 785–87, 606 S.W.2d 366, 369–70 (1980), the supreme court recognized extremely narrow and strictly guarded exceptions to the timely objection requirement: (1) death-penalty cases involving an error in a matter essential to the jury's consideration of the death penalty itself; (2) cases in which the circuit court made an error of which the appellant had no knowledge at the time; (3) cases in which the circuit court neglected its duty to intervene; and (4) cases involving evidentiary errors that affected the appellant's substantial rights.

This is not a death-penalty case; therefore, Bickham's reliance on *Camargo v. State*, 327 Ark. 631, 640, 940 S.W.2d 464, 469 (1997), which was a death-penalty case to which the first *Wicks* exception applied, is misguided. Further, the supreme court has refused to recognize a *Wicks* exception on a challenge to consecutive sentencing. *Buckley v. State*, 349 Ark. 53, 70, 76 S.W.3d 825, 836 (2002) ("A [circuit] court's decision to impose sentences consecutively is entirely within the court's discretion, *see Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000), and this court has previously required a contemporaneous objection in order to preserve the point for appeal. *See Brown v. State*, 326 Ark. 56, 931 S.W.2d 80 (1996).").

In his reply brief, Bickham suggests that his counsel objected to the circuit court's imposition of the consecutive sentence when he asked the court to "refrain" from imposing

11

a consecutive sentence because the felon-in-possession conviction is a "100% offense" for which Bickham will be required to serve the entire sentence. As set forth above, this request did not preserve the arguments Bickham now makes on appeal.

Pointing to his own outbursts in court—"This ain't right man," "[t]oo much [time] for somebody," and "f[***]ing bullsh[**]t"—Bickham claims the record is "riddled with contemporaneous objection[s] to sentencing." Bickham's outbursts are not proper objections sufficient to preserve the arguments he makes on appeal.

In conclusion, we affirm Bickham's convictions. However, we remand for the circuit court to enter an amended sentencing order that corrects a clerical error. *See Blakes v. State*, 2021 Ark. App. 32, at 4, 615 S.W.3d 768, 771. Bickham was charged, convicted, and sentenced as a habitual offender pursuant to Arkansas Code Annotated section 5-4-501(b). Although the habitual-offender box is checked for the convictions for simultaneous possession of drugs and firearms, possession of firearms by certain persons, and possession of a controlled substance, it is blank for the terroristic-threatening conviction. Therefore, we remand for the circuit court to enter an amended sentencing order that corrects this clerical error. *Bryant v. State*, 2023 Ark. App. 215, at 7–8.

Affirmed; remanded to correct the sentencing order.

BARRETT and THYER, JJ., agree.

*Tim Cullen*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.